Danny Ray SCARBROUGH, Appellant,

v.

The STATE of Texas, Appellee.

No. 930–87.

Court of Criminal Appeals of Texas, En Banc.

June 14, 1989.

Rehearing Denied Sept. 20, 1989.

Thomas A. Dunn, Tyler, for appellant.

Jack Skeen, Jr., Dist. Atty. and Ann M. Monaco, Asst. Dist. Atty., Tyler, Robert Huttash, State's Atty., Austin, for the State.

OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

CLINTON, Judge.

Appellant was convicted of the offense of aggravated sexual assault, and his punishment, enhanced by two previous felony convictions, was assessed by the jury at 99 years in the Texas Department of Corrections.

In a single point of error on appeal appellant alleged the trial court deprived him of his constitutional right to represent himself at trial, recognized by the United States Supreme Court in *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). The Twelfth Court of Appeals held, in an unpublished opinion, that appellant failed unequivocally to assert his right to selfrepresentation, and overruled his point of error. *Scarbrough v. Texas,* (Tex.App. —Tyler, No. 12-86-0173-CR, delivered May 18, 1987). We granted appellant's petition for discretionary review to determine whether appellant's assertion of the right

was indeed unequivocal on the record before us. Tex.R.App.Pro., Rule 200(c)(2).

## I.

On the morning of January 2, 1986, appellant appeared for arraignment without an attorney. Asked by the trial court whether he was able to afford counsel, appellant responded, "I don't want an attorney." When the court asked if this was indeed so, he replied, "That is right, not right now." He indicated he would want an attorney "[w]hen I go to court, I guess[,]" and denied wanting to represent himself. The trial court refused to arraign appellant or allow him to waive arraignment under the circumstances.

Later the same day the cause was recalled and the following colloquy ensued:

"THE COURT: If I recall you stated that you did not have an attorney.

[Appellant]: Yes, sir. I want to represent myself.

THE COURT: Are you saying you want to represent yourself?

[Appellant]: Yes, Your Honor.

THE COURT: Are you telling the Court that you want to represent yourself at all stages of the proceedings, including arraignment?

[Appellant]: For right now, yes, Your Honor.

THE COURT: For right now. Are you expressing some uncertainty as to whether you will want to represent yourself at all stages?

[Appellant]: Yes, Your Honor.

THE COURT: You do have reservations? '

[Appellant]: I would like to represent myself.

THE COURT: All the way?

[Appellant]: Yes, sir, Your Honor."

The trial court then explained to appellant that certain admonishments would be necessary, and declined to undertake those "now because it is a rather lengthy proceeding." Appellant replied, simply, "I request to represent myself, Your Honor." Again the court declined to arraign appellant.

On January 17, 1986, the cause was again called for purposes of admonishing appellant of the dangers and disadvantages of self representation. The trial court announced it had appointed standby counsel, then present, "to assist [appellant] in any way [appellant] would permit his assistance in making the determinations that the Court has an obligation to make." Appellant interjected, "I won't be needing a lawyer. I will take care of it myself." The trial court then began to question and admonish appellant. Appellant stated he was thirty-five years old, a laborer by occupation, with a high school equivalency education. He had never represented himself in a legal matter. He demonstrated an awareness of the charges against him, but had to be instructed regarding the applicable range of punishment. The trial court instructed appellant as to the "technical" nature of rules of procedure and evidence, and the law governing voir dire and jury charges. The court made clear that concessions would not be made at trial on account of appellant's lack of training and experience. The court next questioned appellant about the punishment phase of a trial, during which the following occurred:

"THE COURT: ... Do you think that you are able now to make proper objections if the District Attorney tries to introduce some prior criminal conviction that is not properly proved up or authenticated; do you think you would know when to object and when not to object at the penalty phase? Just give the Court your best answer that you can, whatever you are thinking.

[Appellant]: I believe I could, Your Honor.

THE COURT: All right. Are you willing to take that chance?

[Appellant]: I will let [counsel] take it, then.

THE COURT: I don't quite understand what you are saying now. Tell me what you are saying now. Are you saying you want [counsel] to take over your defense?

[Appellant]: To help me along with it.

THE COURT: To help you?

[Appellant]: Yes, sir.

THE COURT: You want him to be available to help you when you feel the need for him to help you?

[Appellant]: Yes, sir.

THE COURT: Is that right?

[Appellant]: Yes, Your Honor."

After these admonishments appellant assured the trial court that his choice to represent himself was "intelligent, freely made and voluntarily made[,]" and with a full awareness of "the dangers and pitfalls of self representation[.]" The colloquy next turned to the trial court's concern to avoid delay or disruption:

"THE COURT: Do you have any intentions or thoughts that by representing yourself these proceedings or your trial might be delayed or interrupted?

[Appellant]: Yes, Your Honor.

THE COURT: Well, I am not sure you understood the Court's question. The Court's question is simply this, you do or do not have any intent by representing yourself to disrupt the proceedings?

[Appellant]: Oh, no.

THE COURT: You wouldn't do that?

[Appellant]: I don't think so.

THE COURT: All right. You have no desire or intent that the proceedings be delayed?

[Appellant]: No, Your Honor.

THE COURT: Let's suppose we start out in the trial with you representing yourself.

[Appellant]: Yes, sir.

THE COURT: And then at some stage you decide you don't feel quite comfortable representing yourself and you should then say, 'Judge, I want a lawyer to represent me.' Now, at that point do you understand the Court would have to appoint a lawyer if he hadn't already done so, and your lawyer might have to have a day, or two days, or a week in order to prepare to represent you; do you understand that?

[Appellant]: Yes, Your Honor.

THE COURT: And that in itself would cause delay and some disruption. We would have a jury in the box. The Court would have a problem with what to do.

You are assuring the Court that you will be orderly and respectful?

[Appellant]: Yes Your Honor.

THE COURT: Can you tell the Court that you truly want to represent yourself?

[Appellant]: Yes, Your Honor.

THE COURT: Now, do you want [counsel]—the Court to appoint [counsel] to be available at all stages in the courtroom to assist you in any manner and at any time you feel the need for his assistance?

[Appellant]: Yes, Your Honor.

THE COURT: All right. And do you understand that once the trial commences that it will be the expectation of the Court that the trial continue until it has been finally concluded?

[Appellant]: Yes, Your Honor."

Because appellant had undergone a psychological examination to determine his competency to stand trial in a recent prosecution for driving while intoxicated, the trial court decided to defer ruling on appellant's request for self representation pending further psychological evaluation:

"THE COURT: We are going to discontinue this hearing for the time being. The Court's final decision will be made when the Court has done everything the Court knows to do to make the decision that the Court has to make. That decision is whether or not you will be permitted to represent yourself, Mr. Scarbrough, or whether the Court would appoint counsel to represent you all the way through, or the middle ground, you represent yourself with the assistance of an attorney appointed by the Court, for you to utilize as you saw fit. Those are the three choices. The Court would not make those choices at this time. I think the Court is going to order that you have another examination."

By the time of the next hearing in this cause, however, on January 22, 1986, the trial court had decided it did not require further psychological evaluation after all. On this day the following exchanges took place:

"THE COURT: Mr. Scarbrough, you have had a little time to think, you have had time to visit and confer with [counsel]. Do you still feel that you are capable of effectively representing yourself on this case?

[Appellant]: Yes, Your Honor, I do.

THE COURT: You may be seated while I am asking these questions.

Now, the Court is not quite clear on exactly what your request is. I can't decide, or haven't to this point been able to decide, if you are wanting to handle your defense yourself all the way through, including the arraignment—you haven't been arraigned yet, nothing has happened yet, Mr. Scarbrough; do you understand that?

[Appellant]: (Nodding head up and down.)

THE COURT: Or are you wanting to represent yourself on certain portions of the trial, then turn it over to [counsel] for other portions of the trial, and then after [counsel] has handled a portion then you continue, and so on and so forth, in a rotating sort of a manner. Can you enlighten the Court a little as to what you have got in mind and what your request is?

[Appellant]: I will handle it all the way through, Your Honor. He can stay as advisory—to advise me a little along, it would be all right.

THE COURT: Well, do you want [counsel] to be present at all times in the courtroom available to you for advice when you think you need it?

[Appellant]: If he wishes—if he wishes to.

THE COURT: What is your wish?

[Appellant]: I could use some advice every now and then.

THE COURT: Do you think you could use a little advice along [sic]?

[Appellant]: Yes, Sir.

THE COURT: All right. Do you feel that when you needed—felt the need for advice you would call on [counsel] for advice?

[Appellant]: Yes, Your Honor.

THE COURT: Do you think you would follow his advice?

[Appellant]: If I felt like I should I would.

THE COURT: If you felt like you shouldn't you wouldn't, I take it.

[Appellant]: (Laughing.)

\* \* \* \* \* \*

THE COURT: ... I have got an obligation to make a decision myself, even though you say you feel you can better represent yourself, I have got to make a determination of whether you freely and voluntarily and intelligently waive the assistance of counsel knowing all of the dangers and disadvantages of representing yourself. That is the determination I have got to make. Do you think that I ought to find that you knowingly and intelligently and voluntarily give up the right to assistance of counsel with the full knowledge of the dangers, the risks, pitfalls, and the consequences of representing yourself?

[Appellant]: Yes, Your Honor.

THE COURT: All right. Whatever risks are involved you say you are willing to take them?

[Appellant]: Yes, sir.

THE COURT: All right. But you do want [counsel] to be available at all times to advise you when you request advice and to participate when you request him to participate?

[Appellant]: Yes, Your Honor.

THE COURT: By that I mean the Court assumes what you are saying is that you want to represent yourself except to the extent that you may choose to seek the advice and the assistance of [counsel]?

[Appellant]: Yes, Your Honor."

Without further ado, the trial court arraigned appellant. Thus, while the record is not explicit, it appears the trial court contemplated affording appellant what at the hearing on January 17 was identified as the "middle ground"—in effect, hybrid representation. Scheduling of a trial date was deferred "until [appellant] and [counsel] have had a chance to file any pretrial motions that you might see fit to file, and

make what preparation you think needs to be made[.]"

The cause was called once more on February 18, 1986:

"THE COURT: ... The Court notices that the purpose of this hearing is to hear and consider certain pretrial motions filed by the defendant on February 12. The pretrial hearing of those motions was originally scheduled for Thursday, February 14, 1986. But on that date the Court received a handwritten note from the defendant bearing file mark February 12, 1986, which reads as follows: "Dear Judge Tunnell, I, Danny Scarbrough, would request the use of the law library or the use of criminal law books for use in handling my defense as my own lawyer." Signed Danny Scarbrough.

The Court makes this note a part of the record on the proceedings heretofore had, considering the request of the defendant to represent himself. Because the Court received such note and wanted to consider the request the Court canceled and rescheduled the hearing on the pretrial motions originally scheduled for February 14, 1986, and reset the hearing for this date. Before proceeding with the hearing on the pretrial motions the Court thinks it proper to give further consideration to the defendant's request for self representation, especially in light of the note which the Court has just read.

Mr. Scarbrough, I'll ask you a few questions. Specifically what criminal law books do you wish?

[Appellant]: Texas Code of Criminal Justice and proceedings and motions that—I will have to check a few of them out.

THE COURT: Speak a little louder.

[Appellant]: Ones on Texas Criminal Justice on proceedings and filing motions and look up the laws and procedures.

THE COURT: Were you wanting the Court to—

[Appellant]: Give me access to the law library is what I need.

THE COURT: Library?

[Appellant]: Yes, sir.

THE COURT: Well, for what period of time do you think you would want access to the law library?

[Appellant]: I needed it a long time ago. I don't know. I don't have any idea.

THE COURT: Don't know how long it would take?

[Appellant]: I have already got my motion for dismissal and to afford a speedy trial here with me. I would like to file it.

THE COURT: Getting back to the question about use of a library, how long do you think you would need to use the library before we proceed—

[Appellant]: I am ready.

THE COURT: —to a hearing on these motions?

[Appellant]: I will be ready whenever the Court is ready, Your Honor.

THE COURT: But you do want to use the library?

[Appellant]: Yes, Your Honor, I would like to.

THE COURT: Is that because you feel that you are not prepared or sufficiently informed to represent yourself?

[Appellant]: No, Your Honor, I don't feel that.

THE COURT: Well, now to allow you to use the library so long as you are incarcerated and not under bond, of course, would require that you in effect be released from jail on bail, or that you remain in the custody of the sheriff or a deputy, which would tie the deputy up during the time that you were using the law library. Usually when you start using the law library one book calls for you to want to see another one or want to see another one, involving a considerable period of time. I notice the motions—the two motions that are filed—pretrial motions are signed personally by you pro se. It appears to the Court that the motions are in rather expert form as to form and content. Certainly suggestive to the Court that a competent, experienced attorney actually prepare the motions for your signature; is that correct?

[Appellant]: I had help with it, sir.

THE COURT: Sir?

[Appellant]: I had help with it.

THE COURT: Mr. Scarbrough, this Court is not convinced that you truly want to represent yourself. From the discussions we have had before leads the Court to believe that you want [counsel] to act on your behalf at certain times as you might choose, and that you act for yourself at certain times as you might choose. Based upon the full consideration along with the questions the Court has asked the defendant and the defendant's answers to that, the Court has fully considered all of those matters, including the attitude and demeanor of the defendant on the various occasions before the Court, the Court feels that the Court cannot abandon its responsibility and duty of the conduct of the trial in an orderly, dignified, and efficient manner. The Court is not willing to have a farce, a mockery of justice in the judicial process. The Court is reducing its finding and conclusions to writing which will be entered of record. All of you will be furnished copies. In accordance with the Court's findings and conclusions it is the order of the Court that the defendant's request to represent himself be, and is hereby, denied. That [counsel], the learned, experienced and capable criminal defense attorney of the Smith County Bar be, and is hereby, appointed by the Court to represent the defendant on the trial of this cause and in post-trial proceedings until excused by the Court, with all of the rights, duties and responsibilities traditionally imposed upon and accorded a defense attorney in the trial of a criminal case, including pre-trial and post-trial proceedings.

[Appellant]: We are supposed to be having pre-trial today, Your Honor, not to consider whether I am legally eligible to be my own lawyer or not. I have already been appointed to represent my own self. This is supposed to be pre-trial hearings and also to hear my motion for failure to afford a speedy trial, not to determine whether I am capable of defending myself or not. It has already been stated in the record I was to defend myself and [counsel] would be my counselor to advise me.

THE COURT: Well, the Court had not made a final conclusion as to whether your request to represent yourself would be granted. The Court has been considering that matter continuously. And while there may be statements made by the Court which are upon the record indicating that the Court tentatively thought, tentatively considered that you would be permitted to represent yourself, the Court has had the matter under advisement without a definitive ruling until this time.

[Appellant]: I have the right to file motions.

THE COURT: To the extent—

[Appellant]: The motion for speedy trial is here—to be dismissed because of speedy trial.

THE COURT: To the extent that any oral statements of the Court upon the record may suggest any conclusions different to the conclusions set forth in the written findings which the Court now signs, the written findings which the Court now signs represents the Court's considered and more mature judgment in the final ruling of the Court.

[Appellant]: I still request the law library, Your Honor, and to defend myself. And by the law I have the right to do so."

The trial court's "Findings and Conclusions Regarding Defendant's Request for Self-Representation" appear in the margin.[1]

---

1. The "Findings" read, in pertinent part:

"1.

That defendant is a 35 year old man of average intelligence, but with no training, education, or experience in legal procedures, comprehension or minimal understanding of the rules of evidence or of the criminal law or trial techniques.

2.

That defendant does not want to represent himself without the assistance of an attorney, but wants to choose what role the defendant plays in the conduct of his defense and what role his attorney plays in the conduct of his defense.

3.

Standby counsel was directed to conduct all proceedings in the case from this point forward. Appellant was arraigned a second time. On a number of occasions during the ensuing pretrial hearings appellant personally reiterated his desire to dispense with counsel and represent himself, to no avail.[2]

That defendant wants an attorney to be at his beck and call, doing what defendant wants the attorney to do and when the defendant wants the attorney to do it.

4.

That the defendant wants his attorney to file pre-trial motions for the defendant to sign and pre-trial motions have been prepared by [counsel], who, following the Court's initial interrogation of defendant on his request to represent himself, was appointed by the court to represent the defendant "in such capacities as decided by the Court".

5.

That defendant's request to represent himself is conditioned upon an attorney acting on defendant's behalf as found in findings numbered 2 and 3 above.

6.

That defendant's request to represent himself is further conditioned upon his being furnished law books in order to prepare to represent himself.

7.

That defendant does not knowingly, intelligently and competently choose self representation.

8.

That defendant chooses only a hybrid form of representation—an on again off again situation.

9.

That defendant does not have the understanding of the dangers and pitfalls of self-representation sufficient to enable him to make an intelligent choice to represent himself.

10.

That defendant's demeanor and attitude when first appearing before the court on January 2, 1986 bordored [sic] on hostility and resentment.

11.

That defendant's courteous and respectful attitude exhibited in subsequent interrogations by the court were the result of the influence of the appointed counsel ... without which, defendant's attitude and demeanor would, and will be, as exhibited in his first appearance before the court—intolerable.

12.

That defendant, notwithstanding his statements to the contrary, does not truly want to represent himself.

13.

That defendant does not truly want to give up his right, and does not knowingly and intelligently waive his right to counsel.

14.

That permitting the conduct of the trial in the manner desired by defendant, alternating the conduct thereof from defendant to appointed counsel at the whim of the defendant, would obstruct orderly procedure in the court and interfere with the fair administration of justice.

15.

That furnishing defendant law books to prepare himself to represent himself will cause unreasonable delay in both the commencement and completion of trial, and that such is defendant's unstated purpose and intent for the request for law books.

16.

That, but for defendant's request for law books in order to prepare himself to represent himself, the case would have gone to trial the week of February 17, 1986, unless a valid and meritorious [sic] motion for continuance had been filed and granted.

17.

That permitting defendant to conduct the trial and his defense in the manner above found by the court to be defendant's desire is and would be a surrender by the court of its duty and responsibility for the conduct of the trial in an orderly, dignified, and efficient manner and will likely result in a farce and mockery of justice and the judicial process."

2. One of counsel's first actions on behalf of appellant was to request and obtain a hearing to determine appellant's competency to stand trial. The hearing was held May 27 and 28, 1986. Ironically, the ultimate issue for the jury to resolve, as framed by the advocates in final argument, was whether appellant was *unable* "to consult with his lawyer with a reasonable degree of rational understanding[,]" Article 46.-02, Sec. 1(a)(1), V.A.C.C.P.; or, rather, was simply *unwilling* to do so. That the jury found him able but unwilling to consult with his lawyer would certainly seem to militate in favor of concluding appellant genuinely did not wish counsel to conduct his trial.

To compound the irony, at the conclusion of the competency hearing the trial court held appellant in contempt of court for speaking out during final arguments in an attempt to explain he had not wanted counsel to represent him. The trial court subsequently filed supplemental findings relevant to appellant's request for self representation, to the effect that appellant's contumacy at the competency hearing indicated that to allow him self representation at trial would only guarantee disruption, "dispossessing the trial judge."

A week after the competency hearing, counsel filed a motion to withdraw, citing appellant's refusal to cooperate in his own defense. At a hearing on June 16, 1986, observing that any newly appointed attorney would simply experi-

In its opinion on original submission the court of appeals relied upon the trial court's conclusion that appellant actually requested, not self representation, but "a right to represent himself in conjunction with representation by" counsel. Directed on rehearing to instances in the record wherein appellant appeared unequivocally to invoke his right to undiluted self representation, the court of appeals noted that "a defendant may forfeit his right to self-representation by taking vacillating positions on the issue[,]" citing, *inter alia, Brown v. Wainwright,* 665 F.2d 607 (CA5 1982).

## II.

 In order competently and intelligently to invoke his Sixth Amendment right to represent himself, an accused "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Faretta v. California,* 422 U.S. at 835, 95 S.Ct. at 2541, 45 L.Ed.2d at 582. As we have shown *ante,* appellant in this cause was provided an extensive awareness of problems in the undertaking so that his decision would not be lightly made. See *Martin v. State,* 630 S.W.2d 952, 954 n. 5 (Tex.Cr.App.1982). However, "a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation[.]" 422 U.S. at 835, 95 S.Ct. 2541, 45 L.Ed.2d 581–82. "[N]either the defendant's technical legal training nor his ability to conduct an adequate defense are requisites for self-representation." *Burton v. State,* 634 S.W.2d 692, 694 (Tex.Cr.App.1982). While the choice must be knowingly and intelligently made, it need not be wise. Indeed, the accused must be permitted to "conduct his own defense ultimately to his own detriment," if that is his informed decision. 422 U.S. at 834, 95 S.Ct. at 2541, 45 L.Ed.2d at 581. Whether he is competent to represent

himself is immaterial; the appropriate question is whether he is competent to choose the endeavor. Moreover, that its exercise may cause some inconvenience or even disruption in the trial proceedings, so long as it is not a calculated obstruction, cannot deprive the accused of the right, once asserted. *Id.,* n. 46.

It is true that "the right to self-representation does not attach until it has been clearly and unequivocally asserted." *Funderburg v. State,* 717 S.W.2d 637, 642 (Tex. Cr.App.1986). Perceiving appellant to vacillate, the court of appeals equated vacillation with equivocation in this cause, and thereby held appellant failed to assert his right to self representation. We do not agree, however, that on the facts presented it can be said that appellant consciously vacillated.

 Nominally, at least, appellant invoked his right to self representation as early as the second colloquy with the trial court on January 2. At no time from this point on did he deviate from the position that he did not want counsel *alone* to represent him. It is well established that an accused has no absolute right to hybrid representation. E.g., *Landers v. State,* 550 S.W.2d 272 (Tex.Cr.App.1977); *Webb v. State,* 533 S.W.2d 780 (Tex.Cr.App.1976). See also *McKaskle v. Wiggins,* 465 U.S. 168, 183, 104 S.Ct. 944, 953, 79 L.Ed.2d 122, 136 (1984). Nevertheless, a trial court may certainly permit hybrid representation in its discretion. *Webb v. State,* supra, at 784, n. 2; *McKaskle v. Wiggins,* supra. So long as it does not interfere with the accused's actual control over his own defense or undermine his appearance before the jury in the status of a *pro se* defendant, participation of standby counsel does not infringe upon *Faretta*'s guarantee of self representation, and may even be imposed upon the accused consistently with the Sixth Amendment. *McKaskle v. Wiggins,* 465 U.S. at 185, 104 S.Ct. at 954, 79 L.Ed.2d at 137.

---

ence the same frustrations, the trial court denied counsel's motion. At this hearing appellant reiterated his wish to proceed *pro se.* Trial

began on June 24, 1986, with appellant represented by counsel.

In the face of appellant's persistent assertion of his right to self representation over the course of several hearings, finding it no doubt a more palatable alternative, the trial court offered appellant the "middle ground" of hybrid representation. Evidently appellant preferred this alternative as well, for he accepted it readily enough. There is nothing contained in his answers to the trial court's inquiries, however, to suggest he contemplated thereby relinquishing ultimate control over the course of his defense, or abandoning the appearance of a defendant *pro se*—in fact, quite the contrary. We cannot agree appellant's acceptance of standby counsel served to waive his prior asserted right to self representation in this cause. Nevertheless, like Tantalus, appellant watched the right recede the moment he attempted to partake.

Moreover, even assuming acceptance of standby counsel were necessarily inconsistent with assertion of the right to self representation, in our view the record fails to support the trial court's factfinding that appellant's desire to represent himself was "conditioned" on availability of standby counsel. See n. 1, *ante*. Without further questioning, the trial court could not possibly have made this determination.

Though appellant made it clear on January 2 that he did not want counsel, the trial court made standby counsel available on January 17. On that day, and on January 22, in the course of being admonished of the dangers and disadvantages of self representation, appellant acknowledged that he would like counsel to "help" him, and that he "could use some advice every now and then." Nonetheless, he assured the trial court he wanted "to handle it all the way through[.]" While clearly willing to accept aid of standby counsel, appellant thus displayed an unwavering desire to conduct his own defense, for better or worse. That appellant subsequently relied on standby counsel to prepare pretrial motions for his signature does not demonstrate that, had he been denied that help, he would not still have chosen to represent himself. Yet on February 18 the trial court denied him both hybrid and self representation.

We now hold that as part of the admonishments of the dangers and disadvantages of self representation, an accused should be made aware that self representation is exactly that. The trial court should make it plain to the accused that he has no *right* to standby counsel. Where an accused, though asserting a desire for "self" representation, indicates he would prefer what actually amounts to hybrid representation, the trial court should decide at the earliest practicable moment whether to allow it, and if not, should inform the accused he must choose instead between two mutually exclusive rights—the right to self representation or to representation by counsel—and that there is no "middle ground." If hybrid representation is not to be a permissible option, the accused must be made aware of that circumstance, and given the opportunity, thus informed, to reassert his right to self representation. Thereafter, if he continues to insist on conducting his own defense, but only with the selective aid of counsel, it may be said his assertion of the right to self representation is "conditional," and thus, equivocal—but not before.

We must also discount the trial court's finding that appellant's assertion of the right to self representation was "conditioned" on his request for the use of law books and the law library, for that notion is positively refuted by the record. Although he asserted that, consistent with his motion, he "would like to" use the law library, appellant assured the court he would "be ready whenever the Court is ready," and denied he was "not prepared or sufficiently informed to represent" himself. By all appearances appellant was willing to proceed whether afforded access to the law library or not. A trial court concerned about potential delay under such circumstances should simply deny an accused access to legal resources, see *United States v. Wilson*, 666 F.2d 1241, 1245 (CA9 1982), and ascertain whether, in light of that denial, he persists in his request for self representation. Again, if the accused thereafter

demands both self representation and access to legal resources, it may be concluded that his invocation of the right to self representation is "conditional," and hence, equivocal. Here, in view of appellant's express willingness to proceed with or without legal materials, we cannot credit the trial court's conclusion that his invocation of the right was conditional, or that his "unstated purpose and intent" in requesting those materials was "to cause unreasonable delay in both the commencement and completion of trial." See n. 1 *ante*.[3]

We conclude that under the circumstances appellant was improperly denied his Sixth Amendment right to self representation. Denial of that right "is not amenable to 'harmless error' analysis. The right is either respected or denied; its deprivation cannot be harmless." *McKaskle v. Wiggins*, 465 U.S. at 177, n. 8, 104 S.Ct. at 950, 79 L.Ed.2d at 133.

Accordingly, the judgments of the court of appeals and of trial court are reversed, and the cause is remanded to the trial court.

WHITE, J., concurs in the result.

CAMPBELL, J., dissents.

DUNCAN, J., not participating.

TEAGUE, Judge, concurring.

With the exception of two sentences contained on page 17 of the majority opinion, I join the majority opinion.

Had what occurred in this cause, concerning the request by Danny Ray Scarbrough, henceforth appellant, to represent himself, occurred prior to when this Court decided *Martin v. State*, 630 S.W.2d 952

(Tex.Cr.App.1982), I might sympathize with the trial judge's decision not to permit appellant to represent himself. However, at least since 1982, also see *Johnson v. State*, 676 S.W.2d 416 (Tex.Cr.App.1984), and *Blankenship v. State*, 673 S.W.2d 578 (Tex.Cr.App.1984), which reflect how this Court finally grasped what the Supreme Court in *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1974), had stated and held on the issue of self-representation, this Court has made it unequivocally clear, where it is undisputed that the defendant wanted to represent himself and was made aware of the dangers and disadvantages of representing himself, that affirmative efforts of a trial judge to prevent a defendant from representing himself will be nullified by a reversal. Previously, this Court decided the issue almost solely on whether the defendant had waived his right to the effective assistance of counsel, and, where the defendant was permitted to represent himself, the trial court's judgment was usually reversed after this Court found that the defendant was not shown to have affirmatively waived his right to counsel. See, for example, *Murphy v. State*, 644 S.W.2d 487 (Tex.Cr.App.1983). Of course, if the record affirmatively showed that the defendant waived his right to counsel, and the trial judge refused to permit him to represent himself, the trial judge also got reversed. Thus, back then, when it came to whether to permit a defendant to represent himself, because of how this Court had interpreted *Faretta* prior to 1982, trial judges were in a catch–22 situation. It appears that no matter what they did they got reversed. Also see *Geeslin v. State*, 600 S.W.2d 309 (Tex.Cr.App.1980). However, at least since 1984, if a trial

---

**3.** Although the court of appeals did not address it, the trial court's "Findings" also reflect the belief that appellant's conduct at trial, allowing even the middle ground of hybrid representation, would prove "intolerable." See n. 1, *ante*. However, courts should hesitate to deny an asserted right to self representation solely on the basis of predictions of likely recalcitrant behavior. That appellant's "demeanor and attitude" on January 2 "bordered [sic] on hostility and resentment" does not alone indicate a level of intractableness sufficient to justify deprivation of his right to self representation. Moreover,

given the frustration obviously engendered by the "catch–22" in which appellant found himself at the competency hearing, see n. 2, *ante*, we do not consider his brief outbursts there a valid portent of how he would have conducted himself had he been afforded the right to represent himself at trial.

In short, we find no support in the record to justify concluding appellant's assertion of his right to self representation was calculated to obstruct, or would "likely result in a farce and mockery of justice and the judicial process."

judge who is confronted with the issue of whether to permit a defendant to represent himself will take the time to carefully read the above cases decided at least since 1984, he should no longer be faced with any sort of dilemma. The issue in this cause arose in 1986, which was long after *Martin, Johnson,* and *Blankenship* were decided.

The record before us makes it absolutely and unquestionably clear, although perhaps done in good faith, that the trial judge was simply not going to permit appellant to represent himself at his trial. It is or should be obvious to almost anyone who reads the record before us that at every step of the way the trial judge was constantly on the look-out for a legal way to justify his not permitting appellant to represent himself, or at least to legally obstruct appellant's desire to represent himself. The learned trial judge clearly erred.

In its "Supplemental Per Curiam On Motion For Rehearing" opinion, the court of appeals alluded to the trial judge's finding that "[appellant's] request for law books was a calculated attempt to cause unreasonable delay." However, there is absolutely no evidence in the record to support this finding, and the trial judge's finding simply amounts to nothing less than another reason, no, an excuse, why he was not going to let appellant represent himself.

I only write because I am concerned that the following two sentences in the majority opinion might in the future cause another learned trial judge to be reversed.

A trial court concerned about potential delay under such circumstances should simply deny an accused access to legal resources, see *U.S. v. Wilson,* 666 F.2d 1241, 1245 (9th Cir.1982), and ascertain whether, in light of that denial, he persists in his request for self representation and access to legal resources, that it may be concluded that his invocation of the right to self representation is "conditional," and hence, equivocal.

*U.S. v. Wilson* is not completely on point because there the defendant was actually given access to a law library for preparation of a motion that he himself prepared and filed.

In this regard, I do not disagree with the majority opinion's conclusion that "in view of appellant's express willingness to proceed with or without legal materials, we cannot credit the trial court's conclusion that his invocation of the right was conditional, or that his 'unstated purpose and intent' in requesting those materials was 'to cause unreasonable delay in both the commencement and completion of trial.'" Thus, the ancillary issue of whether an incarcerated defendant who is awaiting trial and who is entitled to represent himself has a fundamental constitutional right of access to an adequate prison law library, under reasonable conditions, becomes moot in this instance, and this Court should not be suggesting to the members of the Bench that a trial judge can deprive a defendant of his right to self-representation if the defendant makes a request for law books or requests the use of the prison law library, which is what I believe the majority opinion inadvertently does by the above two sentences. On the right of a prisoner to use law books, the right to use a prison law library, and the duty of the State to provide an adequate law library, see *Bounds v. Smith,* 430 U.S. 817, 828, 97 S.Ct. 1491, 1498, 52 L.Ed.2d 72 (1977); *Cruz v. Hauck,* 627 F.2d 710, 719 (5th Cir.1980); and *Dreyer v. Jalet,* 349 F.Supp. 452 (S.D.Tex. Houston Div.1972). Factually, however, these cases are not on point to any issue before this Court to resolve.

If a defendant is entitled to represent himself, and there is a prison law library, a defendant's request to use the law library should pose no real problems. However, if no prison law library exists, a serious problem may exist for the trial judge, if the defendant demands access to law books and research material for the purpose of preparing his motions and his defense, if any. In that regard, I do not envy such a trial judge. However, as long as *McKaskle v. Wiggins,* 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984), which I believe is one of the most demeaning to lawyers decision ever handed down by the Supreme Court, remains on the books, if no prison law library exists, the trial judge should ap-

point the defendant "stand-by" counsel so that the lawyer can become the defendant's law clerk.

Of course, where it has been determined that the defendant has the right of self-representation, it would be ludicrous and asinine for anyone to argue that such a defendant is not entitled, either directly or indirectly, to access to legal books and research materials for the purpose of preparing his motions and his defense. It appears to me that on January 16, 1987, had the trial judge granted appellant's request to represent himself, and had made it clear to appellant that the attorney he had appointed as stand-by counsel was only going to be appellant's law clerk, the issue that is actually before this Court would have become moot.