Valentine-SD v. State 
















IN THE
TENTH COURT OF APPEALS
 

No. 10-96-080-CR

     STEVEN DAVID VALENTINE,
                                                                                              Appellant
     v.

     THE STATE OF TEXAS,
                                                                                              Appellee
 

From the 18th District Court
Johnson County, Texas
Trial Court # 31053
                                                                                                    

O P I N I O N
                                                                                                    

      A jury convicted Steven David Valentine for the offense of Injury to an Elderly Individual and
assessed punishment at 99 years' confinement and a $10,000 fine. Valentine now attacks his
conviction claiming the trial court erred by denying him the right to represent himself. 
Additionally, Valentine complains that the trial court erred when it allowed the introduction of his
penitentiary packet for enhancement purposes. Because the trial court did not commit any error
requiring reversal, we affirm.
      Valentine's first point alleges the trial court erred when it overruled his motion to represent
himself at trial. It is well established that the Sixth Amendment to our federal constitution
guarantees an accused the right to forgo counsel and represent himself or herself. Faretta v.
California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); Funderburg v. State, 717
S.W.2d 637, 641 (Tex. Crim. App. 1986); Blankenship v. State, 673 S.W.2d 578, 582 (Tex.
Crim. App. 1984). The accused must personally decide whether assistance of counsel in his or
her particular case is advantageous. Blankenship, 673 S.W.2d at 583. This choice must be
honored out of that respect for the individual which is the lifeblood of the law. Id. However, the
right to self-representation does not attach until it has been clearly and unequivocally asserted. 
Scarbrough v. State, 777 S.W.2d 83, 92 (Tex. Crim. App. 1989); Funderburg, 717 S.W.2d at
642.
      The following colloquy occurred when Valentine appeared for his arraignment after the trial
court appointed Ms. Edith Roberts to represent him:
VALENTINE: I want to relieve Ms. Roberts as being my attorney. I want to fire her
and have someone else set when you have a chance.
COURT: I deny the request.
. . . 
VALENTINE: I believe I have a right by law to fire this attorney and have another
attorney appointed if I feel like she is not representing me properly. Is that the truth
under Texas state law?
COURT: You are entitled to a court-appointed attorney but not necessarily the attorney
of your choice.
VALENTINE: I believe under the law I have the right to have three choices.
At a pre-trial hearing, Valentine took the stand to further urge his displeasure with his court-appointed attorney. The following discourse occurred during this hearing:
MS. ROBERTS: And Mr. Valentine, in this case you have been appointed Edith Roberts
as a Court Appointed attorney along with Christina Sumpter?
VALENTINE: That's correct.
MS. ROBERTS: And you have asked the Court to fire me?
VALENTINE: That's correct.
COURT: Let's stop it right there. Let the record reflect I was in six weeks of
jury trial, and I believe a visiting judge handled that.
MS. ROBERTS: Yes, Judge Derwood Johnson handled that and did not let him
fire his counsel.
MS. ROBERTS: You are under the impression, are you not, that you're entitled to three
attorneys?
VALENTINE: Two alternates. I can remove two and have two alternates.
MS. ROBERTS: So you think this is an illegal procedure?
VALENTINE: Correct. Because I was denied my rights.
MS. ROBERTS: Do you want to hire private counsel?
VALENTINE: I don't want to hire private counsel. I wanted to have another counsel
set because you told me in person there was nothing you could do.
MS. ROBERTS: That's right. I told you I felt like there was no defense to this lawsuit.
VALENTINE: Correct.
MS. ROBERTS: And I recommended you plead. I could not think of any kind of
defense?
VALENTINE: Since you said you can't defend me, I don't want you to be my attorney.
MS. ROBERTS: Let me ask you this. Have you talked some about representing
yourself? Do you want to represent yourself?
VALENTINE: I wanted to see who the next attorney was going to be before I do that.
Subsequently, Valentine renewed his objection to Ms. Roberts continued representation of him
prior to voir dire. The relevant portions of that dialogue are as follows:
MS. ROBERTS: Judge, maybe before we start jury selection I could put Mr. Valentine
on the stand. He would like me to ask them if they believe in Jesus.
VALENTINE: Also during pre-trial she stated she cannot defend me. She plainly stated
in pre-trial she can't defend me. But I have the right to defend myself and to have
counsel. Since she stated she can't defend me, I would like to ask my own questions.
MS. ROBERTS: I believe the statement was I believe there is not a real defense as such.
VALENTINE: Since she feels that way I don't have a proper defense.
. . . 
MS. ROBERTS: We're getting ready to start jury selection, and you have requested that
I ask on voir dire examination if they believe in Jesus; is that right?
VALENTINE: Correct.
MS. ROBERTS: And I have informed you I cannot ask that type question?
VALENTINE: I have stated I don't know why because he asked them to swear by God
that they're going to tell the truth. And since in the Bible of God it states that Jesus is
the son of God, I want them to be asked if they believe in Jesus. I don't want them to
be asked anything else from our side.
MS. ROBERTS: For the record, you have written records that you have signed that you
were Jesus?
VALENTINE: Correct.
MS. ROBERTS: And you believe you're Jesus; is that correct?
VALENTINE: There's people around here that know it for a fact. I'll have proof in the
courtroom from some of our witnesses from Austin.
COURT: Anything else you want to put on?
MS. ROBERTS: No thank you.
VALENTINE: What about this other thing about me being able to ask witnesses? You
don't have a problem with that? You have no problem with me asking questions to the
witnesses?
COURT: You want him to do the voir dire?
MS. ROBERTS: You want to the voir dire yourself?
VALENTINE: During the trial I want to be able to ask the witnesses questions. Because
you've already stated you don't feel you can defend me.
COURT: Here's what the procedure would have to be. Even if you have like two
lawyers. For instance Mr. Chambless and Cawthon, they don't get to both ask the
witnesses questions.
VALENTINE: I want to ask questions. One thing, it's impossible for her to know what
happened and how to ask the questions.
COURT: That's between you and your attorney.
MS. ROBERTS: You understand if you open the door by asking the wrong kind of
question.
COURT: I have not had this brought up before that he wished to do this. I have not
properly qualified him. I'm going to overrule his motion to represent himself at this
time.
VALENTINE: Even though at the pre-trial she said she can't defend me?
COURT: It's overruled. Have a seat.
VALENTINE: Thank you very much for putting that on the record.
      We find that Valentine failed to clearly and unequivocally assert his right to represent himself. 
Scarbrough, 777 S.W.2d at 92; Funderburg, 717 S.W.2d at 642. Valentine stated that he wanted
to ask questions of the witnesses.


 This does not equate with total self-representation. At most,
Valentine asserted that he desired a hybrid representation where he could ask questions and his
lawyer handled all other matters. An accused has no absolute right to hybrid representation. 
Scarbrough, 777 S.W.2d at 92. Therefore, we overrule Valentine's first point.
      In his second point, Valentine alleges that the trial court erred in admitting a penitentiary
packet during the punishment phase. Valentine points out that, although the Oklahoma judgment
convicting him of Possession of Controlled Dangerous Drug with Intent to Distribute was dated
February 11, 1990, the offense occurred on May 17, 1990. Furthermore, Valentine complains
the judgment sentenced him to four years probation and 128 days in jail. Notwithstanding, the
judgment declared that Valentine's sentence ended in February 1995, five years after the judgment
date. Additionally, the order revoking Valentine's probation referred to 1991, whereas the
original judgment contained the year 1990. Finally, Valentine asserts that the order failed to
indicate he was represented by counsel when his probation was revoked and the conviction became
final.
      A prior conviction alleged for enhancement may only be collaterally attacked on the grounds
that it is void or tainted by a constitutional defect. Galloway v. State, 578 S.W.2d 142, 143 (Tex.
Crim. App. [Panel Op.] 1979); Ellis v. State, 696 S.W.2d 209, 210 (Tex. App.—Eastland 1985,
pet. ref'd). A technical defect in a penitentiary packet is insufficient to render the proof of a prior
conviction inadmissible. Washington v. State, 905 S.W.2d 665, 668 (Tex. App.—Houston [14th
Dist.] 1995, pet. ref'd); Holmes v. State, 681 S.W.2d 812, 813 (Tex. App.—Houston [14th Dist.]
1984, no pet.). Valentine's first three complaints regarding the penitentiary packet relate to the
original judgment date of February 11, 1990. It is clear to us that this date is a clerical error
which should read February 11, 1991. When this date is interposed into the original judgment,
Valentine's complaints concerning the date become meaningless. This clerical error does not
render the penitentiary packet evidencing Valentine's prior conviction inadmissible. Id.
      Valentine's fourth complaint about the penitentiary packet is that the order revoking his
probation fails to denote that he was represented by counsel. This order recited that Valentine
appeared "in person" and there is no mention of Valentine's counsel appearing. The deprivation
of counsel is a constitutional infirmity for which a prior conviction may be collaterally attacked. 
Galloway, 578 S.W.2d at 143; Ellis, 696 S.W.2d at 210. However, after the State establishes a
prima facie case of proof of a prior conviction, the burden then shifts to the defendant to make an
affirmative showing of any defect in the judgment.


 Johnson v. State, 725 S.W.2d 245, 247 (Tex.
Crim. App. 1987). Although Valentine objected to the introduction of the penitentiary packet, he
failed to produce any affirmative evidence showing that he lacked counsel when his probation was
revoked. Therefore, we overrule Valentine's second point.
      We affirm the judgment.
 
                                                                                 REX D. DAVIS
                                                                                 Chief Justice

Before Chief Justice Davis,
          Justice Cummings, and
          Justice Vance
Affirmed
Opinion delivered and filed April 16, 1997.
Do not publish