MARTIN v. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-04-344-CR

EDDIE WAGNER MARTIN, JR. APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 89TH DISTRICT COURT OF WICHITA COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Introduction

Appellant Eddie Wagner Martin, Jr. appeals from his conviction for murder.  In two points, he complains that the trial court erred when it denied his request to represent himself at trial.  We affirm.

Procedural Background

Because Appellant does not challenge the sufficiency of the evidence, we need not recite the facts of the underlying guilty verdict.  Appellant was charged by indictment with murder; the indictment contained one enhancement allegation.  The jury determined Appellant was guilty and the enhancement allegation was true.  The jury assessed Appellant’s punishment at sixty years’ confinement and a $5,000 fine.

Right To Self-Representation

In two points, Appellant contends the trial court erred by denying him his  constitutional right of self-representation.  Under the Sixth Amendment to the United States Constitution, an individual may choose to represent himself so long as he makes the decision to do so intelligently, knowingly, and voluntarily.  
U.S. Const
. amend. VI; 
Godinez v. Moran
, 509 U.S. 389, 399-402, 113 S. Ct. 2680, 2686-88 (1993);
 Faretta v. California
, 422 U.S. 806, 835, 95 S. Ct. 2525, 2541 (1975);
(footnote: 2) 
Oliver v. State
, 872 S.W.2d 713, 715 (Tex. Crim. App. 1994).  In Texas, this right is also protected by the Texas Constitution.  
Tex. Const. 
art. 1, § 10; 
see
 Tex. Code Crim. Proc. Ann.
 art. 1.051(f) (Vernon 2005)
. 

In the seminal case of 
Faretta v. California
, the Court determined that weeks before trial the defendant had clearly and unequivocally declared to the trial judge that he wanted to represent himself and did not want counsel.  
422 U.S. at 835, 95 S. Ct. at 2541.  The Court held that the record affirmatively showed that Faretta was literate, competent, and understanding, and that he was voluntarily exercising his informed free will. 
 Id.
  The Court further stated,

The trial judge had warned Faretta that he thought it was a mistake not to accept the assistance of counsel, and that Faretta would be required to follow all the “ground rules” of trial procedure.  We need make no assessment of how well or poorly Faretta had mastered the intricacies of the hearsay rule and the California code provisions that govern challenges of potential jurors on voir dire. For his technical legal knowledge, as such, was not relevant to an assessment of his knowing exercise of the right to defend himself.

Id.
 (internal citations omitted).  Applying the holding of 
Faretta
, the Texas Court of Criminal Appeals has similarly opined,

“[A] defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation[.]"  [N]either the defendant's technical legal training nor his ability to conduct an adequate defense are requisites for self-representation.  While the choice must be knowingly and intelligently made, it need not be wise.  Indeed, the accused must be permitted to "conduct his own defense ultimately to his own detriment," if that is his informed decision.  Whether he is competent to represent himself is immaterial; the appropriate question is whether he is competent to choose the endeavor.  Moreover, that its exercise may cause some inconvenience or even disruption in the trial proceedings, so long as it is not a calculated obstruction, cannot deprive the accused of the right, once asserted.  

Scarbrough v. State
, 777 S.W.2d 83, 92 (Tex. Crim. App. 1989) (internal citations omitted).

There are two prerequisites that need to be addressed in order to determine whether this right has attached.  First, this right does not attach until a defendant clearly and unequivocally asserts it. 
 Faretta
, 422 U.S. at 835-36, 95 S. Ct. at 2541; 
Scarbrough
, 777 S.W.2d at 92;
 Funderburg v. State
, 717 S.W.2d 637, 642 (Tex. Crim. App. 1986).  Second, the right to self-representation may not be exercised simply to delay the orderly procedure of the courts or to interfere with the fair administration of justice.
  Thomas v. State
, 550 S.W.2d 64, 68 (Tex. Crim. App. 1977); 
Parker v. State
, 545 S.W.2d 151, 156 (Tex. Crim. App. 1977).  

Whether a defendant has invoked his right to self-representation is a threshold factual issue that we review under the abuse of discretion standard.  
DeGroot v. State
, 24 S.W.3d 456, 457 (Tex. App.—Corpus Christi 2000, no pet.).  A trial court abuses its discretion when its decision is so clearly wrong as to lie outside the zone within which reasonable persons might disagree.  
Howell v. State
, 175 S.W.3d 786, 790 (Tex. Crim. App. 2005); 
Cantu v. State
, 842 S.W.2d 667, 682 (Tex. Crim. App. 1992), 
cert denied
, 509 U.S. 926 (1993).

Appellant’s Assertion Of The Right To Self-Representation

On February 17, 2003, Appellant filed a pro se motion requesting substitute appointed counsel.  The motion specifically states that Appellant has reviewed 
Faretta v. California
, and he is “not capable of representing himself; and will not waive his Sixth Amendment right to counsel.”  The motion further states that Appellant informed his appointed counsel that he “is not seeking to request self representation.”

On March 20, 2003, the trial court held a hearing on Appellant’s motion. Appellant acknowledged that the court had previously appointed three different attorneys to represent him, in addition to his present attorney.  Appellant informed the court that he “would like to insist upon my right to counsel” and that he simply wanted a new attorney.  The court said a new attorney would be appointed.  At the hearing, Appellant insisted upon new counsel and did not assert any desire to represent himself; therefore, the court did not admonish Appellant of the dangers of self-representation.  On April 1, 2003, the trial court appointed substitute counsel, Tom Allensworth, to represent Appellant. On August 7, 2003 and November 18, 2003, Appellant pro se filed  motions requesting substitute counsel.  The record does not reflect that the trial court acted upon the motions.  On February 11, 2004, Appellant pro se filed “Defendant’s Waiver Of Right To Counsel, And Motions To Proceed Pro Se.” In this motion, Appellant stated he waived his Sixth Amendment right to counsel, and he requested the court hold a 
Faretta
 hearing and grant his request to proceed pro se.  On March 10, 2004, Appellant pro se filed a “Motion For Faretta Hearing” in which he waived his Sixth Amendment right to counsel, requested he be permitted to proceed pro se, or alternatively, that he be permitted hybrid representation.

On May 13, 2004, the trial court held a 
Faretta
 hearing.  The court properly admonished Appellant about the seriousness of the charges against him and the dangers and disadvantages of self-representation.  After each of the eleven admonitions, the judge inquired if Appellant understood and he answered affirmatively.  The court then inquired if Appellant still wished to “persist in representing [himself] in this matter” and Appellant responded “Yes.”  Mr. Allensworth proceeded to question Appellant about his knowledge of the law.  The court then asked Appellant,

THE COURT:  Okay.  Mr. Martin you heard Mr. Allensworth ask you some really fairly basic simple legal type of questions and obviously you do not know the answers.  Doesn’t that make you uncomfortable about going to trial and representing yourself?

THE WITNESS:  Well, I was uncomfortable even about filing a motion to ask to represent myself, because I’ve read case law pertaining to it about inmates representing themselves before and I understand that it’s, you know, it’s not too wise to do, but I think I have -- I mean Mr. Allensworth, he is basically -- tries to play on my intelligence, he don’t try to help me any.  It wouldn’t do no good whether he represents me in this case or if I represent myself, the outcome will probably be the same.

After the State briefly questioned Appellant, the court stated,
(footnote: 3)
 THE COURT: . . .I don’t want to ram something down your throat.  You have a lawyer and you think the results is worse, 
I can’t help thinking you’re making a terrible mistake to represent yourself. Do you really want to do that?

THE WITNESS:  
No, not really, not really, only -- no.

THE COURT:  I know you’re not completely satisfied with everything Mr. Allensworth’s done, but like I say, at the minimum he can preserve appellant [sic] review for you.  Can’t you try to work with him?  And you’ve already gotten down a plea offer that’s come down ten years, that’s a pretty good deal there.  But I don’t want to ram it down your throat, you’re the one that is paying the price.   We’re not going to the penitentiary, we’re going to be staying here.  
But I want you to feel okay with this.  Wouldn’t you rather have a lawyer so you can preserve appellate review?

THE WITNESS:  
I had really rather have a lawyer.

The court then ruled, 

THE COURT:  Based on what I’ve heard today, based on my understanding of the law, that Mr. Martin has shown to me his educational level, I do find that he is not sufficiently able to represent himself in this matter, and I continue Mr. Allensworth as his attorney in this case.  And I hope that despite the fact that we have had the hearing, that counsel and defendant will be able to work together to get ready for trial which is important to Mr. Martin.

MR. ALLENSWORTH:  I have every confidence we will, Judge.

THE COURT:  
Are you objecting to the decision I made on the Ferretta hearing?

THE WITNESS:  
Yes.

THE COURT:  I will note your exception to that ruling.  
But you did tell me you didn’t want to go without a lawyer, so I think you have some input that you realize it to be a mistake to go without an attorney.
  Mr. Allensworth will continue.

MR. ALLENSWORTH:  Since we’re going to be seeing each other at least on the 8th
 of July, we can go into this - - this will give Mr. Martin an opportunity to brush up on the law and he can reurge the Ferretta Hearing the Friday before we pick a jury if he’s proven to the court he’s more competent about the law at that point in time perhaps I can bid this case a fond farewell.  In the meantime I’m going to prepare for trial.  Is that the instruction from the bench?

THE COURT:  That’s correct.  
He can continue and reurge the motion if he can display a further knowledge of the law at that time.
  Thank you. 

On July 8, 2004, the trial court and the parties dealt with numerous motions filed by Appellant’s counsel, after which they discussed Appellant’s request that the court reconsider his 
Faretta
 motion. 

MR. ALLENSWORTH: . . . My client just informs me that he wants to ask you if you would reconsider his Ferretta Motion.  We left that possibility available to him some time in the past.  Is that right, Eddie?

MR. MARTIN: Yes, sir.

MR. ALLENSWORTH: 
And you want to serve as your own lawyer in this case?

MR. MARTIN: 
Yes, sir.

MR. ALLENSWORTH: Now you’ve had a certain amount of time to hone up on the law since the last time - -

MR. MARTIN: We do - -

COURT REPORTER: You’re going to have to talk louder, please.

MR. MARTIN: We do not have access to a law library for legal terms.

MR. ALLENSWORTH: So if I were to ask you the same question like I asked you last time about three exceptions to the hearsay rule, just as you said last time, you’d say this time, I don’t know them; is that correct?

MR. MARTIN: I have not had access.

MR. ALLENSWORTH: Okay.  I don’t see any reason to disturb your previous ruling, Judge.

THE COURT: I think nothing has changed since then and it appears that Mr. Allensworth is zealously pursuing the case.  He’s covered all the relevant motions you would expect defense counsel to do in the case and nothing has changed as far as the amount of information or legal training or expertise.

When the court questioned Appellant further, he indicated that he was unhappy with Mr. Allensworth because he had not contacted some witnesses. Mr. Allensworth responded, “He thinks getting rid of me is going to buy him another lawyer.  That’s not the case.  Instead, all it’s going to buy him is a ticket into the penitentiary for the next 99 years.”  The court then denied Appellant’s motion.

The case was set for trial for July 12, 2004.  During the pretrial hearing on that date, the parties and the court again discussed Appellant’s request to proceed pro se, as follows:

[BY MR. ALLENSWORTH:]

Q I spoke to you this morning concerning your previous filings on your Ferretta Motion; is that correct?

A Yes, sir.

Q And as a result of those discussions with me, you’ve decided that you want to say something to the Judge; is that correct?

A 
Well, I understood that the Court was going to reconsider my Ferretta Motion, but I wanted to say that I don’t have enough time to try to prepare for trial and it wouldn’t do much good for me to try to go ahead and go by myself right now today.

THE COURT:  Well, I think the last time you brought up the Ferretta Motion was just late last week and you wouldn’t have had much time then either and that was one of the things that we were discussing that you didn’t have a lot of time to prepare by yourself.  I mean, do you think that would have been enough time if you’d had from Thursday til today to be prepared for the trial?

MR. MARTIN:  Not necessarily.

THE COURT:  I don’t think so either.

Q (By Mr. Allensworth) I guess the essential thing is that you had at one time expressed a desire to represent yourself; is that correct?

A Yes, that was about two months ago.

Q And at that time the Judge rejected your motion; is that correct?

A Yes, sir.

Q And because she rejected that motion, then you haven’t had time to acquaint yourself with the law and the facts in the case to the degree that you feel comfortable with; is that correct?

A Yes, sir.

Q Had the Judge made a different decision, say, two months ago, you may have had the time to acquaint yourself with the law and the facts; is that correct? 

A Yes, sir.

Q And it’s your decision today to hire me as predicated upon the Judge’s decision two months ago; is that correct?

A Yes, sir.

MR. ALLENSWORTH:  Pass the witness.

During cross-examination, the prosecutor asked Appellant,

Q 
As we stand here today, you do not want to represent yourself?
 

A 
I don’t have enough time to try to represent myself - - to try to prepare to represent myself.

Appellant’s counsel then asked Appellant, 

Q 
In direct response to Ms. Jones’ question, for today, right now, this moment, it’s your desire for me to represent you; is that correct?

A 
Yes, I need an attorney.

Q But the reason that you had to reach that decision today is because of the Judge’s decision two months ago; isn’t that also correct?

A Yes, sir.

The court then questioned Appellant,

THE COURT:  
Mr. Martin, what is it - - I take it that what you’re telling the Court is that you want to represent yourself, you’re insisting upon your right to represent yourself, but you would need a continuance in order to do that?

THE WITNESS:  
Yes.

. . .

THE COURT:  Let’s go back on the record in Cause Number 39690-C, State versus Eddie Wagner Martin, Jr.  To update what has happened during the recess since last on the record, John Brasher from the district attorney’s office has done some legal research, in addition the court reporter went back and checked on the proceedings at the May 13th
 hearing.  And at the conclusion of that hearing, as Ms. Jones had recalled, the defendant did tell us at that time - - told the Court that he would at least like to have counsel to represent him to be able to preserve appellate review.  That was like the last statement he made to the court.  He did want counsel, at least, for that purpose, for being able to preserve appellate review.  So that was why at that time the court continued Mr. Allensworth to represent the defendant. 

Appellant’s counsel then questioned Appellant as follows:

BY MR. ALLENSWORTH: 

Q Eddie, I guess - - and we had extensive discussion on that same matter in that room.  
Do you have a preference as to whether you go to trial today with me, today without me today, or in January by yourself?

A 
I still would like to assert my right to represent myself.

Q Good enough.  When you say you would like to assert you right to represent yourself, since there are two different possibilities for when you would represent yourself, sit [sic] your desire to represent yourself in January rather than today?

A Is it my desire?

Q Let me spell that out for you.  
When you say you want to represent yourself, do you want to represent yourself starting after lunch when she calls in a jury?

A 
I’m not prepared to represent myself now.

Q So when you say you want to represent yourself, you want to represent yourself in January; is that correct?  Or sometime other than today?

A Yes, that’s correct.

Q We’ll leave it as that.  The Judge may have a another follow-up question or two.

MR. ALLENSWORTH:  Pass the witness.

THE COURT:  I don’t have more questions.  Ms. Jones, do you have any questions?

MS. JONES:  No.

THE COURT:  Well, now that we’re clear about what had happened procedurally in this matter since the last expressed decision of the defendant at the May 13th
 hearing was that he did wish to have counsel, and he stated his reasons for that.  This case  has been, you know, pending since that time and I do find that it would be - - we’ve got a jury waiting to go, I know the State’s witnesses have been subpoenaed, possibly defense witnesses, as well - - I’m not sure about that - - so I’m going to go ahead and proceed with the trial today.  We’ll resume Court at 2:00 o’clock with the venire panel.  And I note the Defendant’s exception to the ruling.

MR. ALLENSWORTH:  
Do you continue on my appointment, Judge?

THE COURT:  
No, I will allow the defendant to represent himself as he has expressed himself to do that.

MR. ALLENSWORTH:  I’m not so sure that’s a correct expression of his desires at this point in time.

Edward, do you want me sitting next to you at 2 o’clock today?

THE WITNESS:  I’m not prepared to represent myself today.

MR. ALLENSWORTH:  
Excuse me.  You need to answer this question yes or not.  Do you want me sitting next to you as your lawyer at 2:00 o’clock in the afternoon; yes or no?

THE WITNESS:  
Yes.

THE COURT:  If that’s the desire of the defendant, certainly, Mr. Allensworth you will continue in your appointment then.

Discussion

Alleged Constitutional Violation

In his first point, Appellant contends the trial court denied him his right to represent himself as permitted by the Sixth and Fourteenth Amendments to the United States Constitution.  

Although Appellant on several occasions purported to waive his right to an attorney and assert his right to represent himself, the record in this case indicates that at every hearing held in the trial court Appellant continued to vacillate regarding whether he desired to exercise his right to self-representation or accept representation by appointed counsel.  At the March 20, 2003 hearing, Appellant stated he did not want to represent himself, he simply wanted substitute appointed counsel.  At the May 13, 2004 hearing, Appellant initially stated he wanted to represent himself, but then told the court that he would “really rather have a lawyer.”  At the July 8, 2004 hearing, Appellant indicated he was unhappy with his current counsel because he had not contacted some witnesses.  The court then discussed this complaint with Appellant and Mr. Allensworth and asked Appellant if he wanted to make any comments on the issue.  Appellant responded that he did not; after his conversation with the court, Appellant did not re-assert his right to self-representation.  At the pretrial hearing on July 12, 2004, Appellant expressly told the court that he wanted Mr. Allensworth to represent him. 

Having reviewed all the pretrial hearings, we conclude that Appellant’s assertion of his right to self-representation was never clear and unequivocal.  Even at the final hearing before trial, Appellant continued to vacillate in his desire to represent himself; the apparent purpose of Appellant’s statements that he wished to represent himself seems to be that Appellant wanted substitute counsel, notwithstanding the fact that his current counsel was at least the fourth counsel appointed by the trial court in this case.  Further, even when the trial court agreed to permit Appellant to represent himself, he declined to do so.  In light of the context in which Appellant expressed his desire to represent himself, we cannot say that the trial court abused its discretion in initially denying his request, or in permitting counsel to represent Appellant at trial after Appellant declined to represent himself.  We overrule Appellant’s first point.

Alleged Violation of Article 1.051

In his second point, Appellant contends the trial court denied him his right to waive counsel and proceed pro se as permitted by article 1.051 of the Texas Code of Criminal Procedure.  
Se
e 
Tex. Code Crim. Proc. Ann.
 art. 1.051(f)-(g).  This section provides that:  a defendant, in writing, may voluntarily and intelligently waive the right to counsel; if the defendant chooses to waive counsel, the trial court shall advise him of the dangers and disadvantages of self-representation; and if the court determines the waiver is voluntarily and intelligently made the court shall provide the defendant with a statement, which the defendant signs, stating that the defendant has been properly advised and waives his right to counsel.  
Id.

In the instant case, the trial court advised Appellant, on the record, of the dangers and disadvantages of self-representation.  Because we have held that Appellant’s attempted waiver of his right to counsel was not clear and unequivocal and that the trial court did not abuse its discretion by not permitting Appellant to represent himself, we further hold that the trial court did not err by not providing Appellant with the written statement specified in article 1.051(g).  We overrule Appellant’s second point. 

Conclusion

Having overruled both of Appellant’s points, we affirm the judgment of the trial court.

PER CURIAM

PANEL A:  HOLMAN, J.; CAYCE, C.J.; and McCOY, J.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:  January 5, 2006

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
“When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel.  For this reason, in order to represent himself, the accused must 'knowingly and intelligently' forgo those relinquished benefits.  Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'”  
Faretta
, 422 U.S. at 835, 95 S. Ct. at 2541 (internal citations omitted).

3:
All emphasis in quotations from the reporter’s record is supplied, unless otherwise noted.