Steve George Tepp v. State

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-03-240-CR

STEVE GEORGE TEPP APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY

------------

OPINION

------------

I.  I
NTRODUCTION

In three points, appellant Steve George Tepp challenges his felony conviction of driving while intoxicated (“DWI”).  In points one and two, appellant complains the trial court erred in denying his right to self-representation and in failing to adequately admonish, warn and inquire into appellant’s desire and suitability to represent himself.  In his third point, he argues that the evidence is factually insufficient to support the verdict.
(footnote: 1)  We affirm.

II.  F
ACTUAL
 
AND 
P
ROCEDURAL 
B
ACKGROUND

Following his August 3, 2003 arrest, appellant was charged with felony DWI.  On August 7 and 8, 2002, appellant signed waivers of court-appointed counsel.  On August 9, 2002, however, appellant completed a financial statement and signed a request for appointed counsel.
(footnote: 2)  On January 27, 2003, and again on May 19, 2003, appellant filed pro se documents entitled “Motion For Self-Representation Along with Appointed Counsel” requesting, pursuant to article 1.05 of the Texas Code of Criminal Procedure, and article I, section 10 of the Texas Constitution, that he be allowed to represent himself along with counsel.  On January 27, 2003 and June 9, 2003, appellant also filed declaration of conflict motions in which he asked the court to remove his appointed counsel.  On May 28, 2003, appellant filed pro se motions to substitute counsel asking that his appointed attorney be replaced by attorney Mimi Coffey, whom appellant considered a “DWI specialist.”

On June 11, 2003, the trial court questioned appellant about his complaints concerning his court-appointed counsel.  At that time, appellant informed the court that he had not had adequate discussions with the trial counsel regarding his pro se motions
(footnote: 3) and his trial strategy.  After explaining that any delay in getting appellant’s case to trial was due to the crowded nature of the court’s docket, rather than his attorney’s lack of interest in the case, the trial court asked appellant if he still wanted to present the matter to the court. Appellant responded, “I don’t know.  I guess, we could go ahead, Your Honor.” The court then asked appellant if it was his desire to withdraw his declaration of conflict, to which appellant responded, “Yes, Your Honor, and I’ll speak with him some more.”

On the day of trial, prior to voir dire, the judge denied appellant’s motion requesting he be allowed to represent himself “along with” his appointed counsel stating, “I’ve noted there are a number of pro se motions in the file.  I am not going to permit hybrid representation.  I am not going to let you and your attorney act as lawyers. . . .  So those motions will be overruled.” Appellant then asked the court for a continuance.  The trial court denied his request stating, “[A]s I said before, when I say hybrid representation, that means I’m not going to have two lawyers representing the defense, you and Mr. Young.  So I’ll entertain any motions that Mr. Young has, but I’m not going to allow you to make any pro se motions in court.”  Appellant then asked to reassert his pro se motion to substitute counsel.  The trial court denied appellant’s request.  
Appellant later pleaded not guilty and stipulated to two prior convictions of DWI.

After hearing the evidence from both sides, the jury found appellant guilty of the felony offense of DWI.  At the punishment phase of the trial, the State introduced evidence of appellant’s two prior convictions of misdemeanor theft, a conviction of misdemeanor assault with bodily injury, and felony convictions of delivery of a controlled substance, burglary of a building, and burglary of a motor vehicle.  After finding both the felony enhancement allegations alleged in the indictment were “true,” the jury assessed punishment at twelve years’ confinement.

III.  A
PPELLANT’S
 R
IGHT
 
OF
 S
ELF
-R
EPRESENTATION
 

In point one, appellant complains that the trial court erred in requiring that he proceed to trial with unwanted appointed counsel rather than permitting him to represent himself at trial.  In point two, appellant argues the trial court failed to adequately admonish, warn, and inquire into the appellant’s desire and suitability to represent himself.
(footnote: 4)
 The United States and Texas Constitutions provide that in all criminal prosecutions, the accused has the right to assistance of counsel for his defense.  
Tex. Const.
 art. 1, § 10. 
 
Faretta
 
v. California
, 422 U.S. 806, 814  95 S. Ct. 2525, 2530 (1975).  
Along with the right to counsel is the right to waive counsel and to represent onesself.  
Faretta
, 422 U.S. at 807, 95 S. Ct. at 2525; 
Robles v. State
, 577 S.W.2d 699, 703 (Tex. Crim. App. 1979). 
 
However, a waiver of the right to counsel will not be lightly inferred, and the courts will indulge every reasonable presumption against the validity of such a waiver.
  
Geeslin v. State
, 600 S.W.2d 309, 313 (Tex. Crim. App. [Panel Op.] 1980).
  
When a criminal defendant chooses to assert the right of self-representation, he must 
make a clear and unequivocal assertion that he wants to represent himself and does not want counsel
.  
Faretta
, 422 U.S. at 835-36, 95 S. Ct. at 2541.  Only at this invocation must the trial court inform the accused of the dangers and disadvantages of self-representation under 
Faretta 
and Article 1.051(g) of the Texas Code of Criminal Procedure, which ensure that the accused knowingly and intelligently waived his right to counsel. 
 Hawthorn v. State
, 848 S.W.2d 101, 123 (Tex. Crim. App. 1992), 
cert. denied
, 509 U.S. 932 (1993).  

The first issue then is whether appellant clearly and unequivocally asserted that he wanted to represent himself and did not want counsel, so as to invoke the admonishment requirement
. 
 Here, appellant never made a clear and unequivocal assertion of his right of self-representation.  He initially signed a waiver of court-appointed counsel.  However, by subsequently signing a request for counsel, it cannot be said that appellant asserted his right to represent himself.  
See Funderburg v. State
, 717 S.W.2d 637, 642 (Tex. Crim. App. 1986).

Similarly, appellant’s pro se motions for self-representation 
along with
 appointed counsel, pursuant to Article 1.051 of the Texas Code of Criminal Procedure and Article I, section 10 of the Texas Constitution, was not an unequivocal demand for self-representation.  
See Hawkins v. State
, 613 S.W.2d 720, 727 n.25 (Tex. Crim. App. 1981) (holding that the language which states “the accused shall have the right of being heard by himself or by counsel, or both” is not to be taken literally); 
see also Scarbrough v. State,
 777 S.W.2d 83, 92 (Tex. Crim. App. 1989) (holding that there is no right to “hybrid” representations—i.e., partially pro se and partially by counsel — although it can be permitted).  Therefore, appellant’s request to work “along with” his attorney was not an unconditional and unequivocal assertion of the right to self-representation.  
Scarborough
, 777 S.W.2d at 93; 
see also United States v. Treff
, 924 F.2d 975, 979 n.6 (10
th
 Cir.), 
cert. denied
, 500 U.S. 958 (1991) (holding that a defendant’s request to serve as co-counsel with his defense attorney is not an unequivocal demand for self-representation). 

Appellant’s pro se motions to substitute counsel filed after his motions for self-representation along with appointed counsel make clear his desire to be represented by counsel at trial.  In his motion to substitute, appellant did not request the appointment of another attorney to work “along with” him, but asked that a specific attorney be substituted for his “attorney of record.” Moreover, when he attempted to reassert the motion the first day of trial, he did not invoke his right of self-representation.  Finally, appellant’s complaints regarding his court-appointed counsel contained in his pro se declarations of conflict, which he later withdrew before the trial court, did not amount to a clear and unequivocal assertion of his right to self-representation.  
See Foster v. State
, 817 S.W.2d 390, 392 (Tex. App.—Beaumont 1991, no pet.).  

In conclusion, appellant never clearly and unequivocally invoked his right to self-representation in the instant case.  He asked only that he be allowed to work “along with” his court-appointed counsel, and complained that he did not want to be represented by the particular lawyer appointed to his case.  Therefore, because appellant never invoked his right to self-representation, the trial court was not required to admonish appellant pursuant to 
Faretta
.  
Hawthorn
, 848 S.W.2d at 123.  We overrule appellant’s first and second points.

V.  F
ACTUAL
 S
UFFICIENCY
 OF THE 
E
VIDENCE
  

In his third point, appellant argues the evidence is insufficient to support the jury’s guilty verdict in that the greater weight and preponderance of the credible evidence demonstrates that the jury’s verdict is manifestly unjust, requiring a new trial. 
 
More specifically, appellant argues that the proof of his guilt is greatly outweighed by (1) a discrepancy between the officers’ testimony regarding how many of the empty beer cans found in appellant’s vehicle were cold to the touch and (2) appellant’s testimony contradicting the officers’ testimony regarding the movement of his vehicle and whether he was intoxicated
.

A.  Standard of Review 

In reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party.  
Johnson v. State
, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); 
Clewis v. State
, 922 S.W.2d 126, 129, 134 (Tex. Crim. App. 1996).  Evidence is factually insufficient if it is so weak as to be clearly wrong and manifestly unjust or the adverse finding is against the great weight and preponderance of the available evidence.  
Johnson
, 23 S.W.3d at 11.  Therefore, we must determine whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the verdict
, or if the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof.  
Id.
  In performing this review, we are to give due deference to the fact finder’s determinations.  
Id.
 at 8-9; 
Clewis
, 922 S.W.2d at 136.  We may not substitute our judgment for that of the fact finder’s.  
Johnson
, 23 S.W.3d at 12.  Consequently, we may find the evidence factually insufficient only where necessary to prevent manifest injustice.  
Johnson
, 23 S.W.3d at 9, 12; 
Cain v. State
, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).

To make a determination of factual insufficiency, a complete and detailed examination of all the relevant evidence is required.  
Johnson
, 23 S.W.3d at 12.  A proper factual sufficiency review must include a discussion of the most important and relevant evidence that supports the appellant’s complaint on appeal.  
Sims v. State
, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).
  

B.  Evidence Presented 

Appellant was found guilty of felony DWI.  The elements of DWI are: (1) operating a motor vehicle, (2) in a public place, (3) while intoxicated (not having the normal use of one’s mental or physical faculties by reason of the introduction of alcohol into the body).  
Tex. Penal Code Ann.
 §§ 49.01(2)(A), 49.04(a) (Vernon 2004).  Because appellant was charged with felony DWI, the State was also required to prove that appellant had twice previously been convicted of operating a motor vehicle while intoxicated.  
Id
. § 49.09(b)(2). 

 At trial, appellant stipulated that he had twice been convicted of operating a motor vehicle while intoxicated, and this stipulation was admitted  into evidence before the jury.  Regarding the offenses for which appellant was on trial, the State called Fort Worth Police Officers R.C. Sutherland, D.J. Scott, and Ken Pierce, as well as Bailiff 
Don Singleton to testify.  Officer Sutherland testified that on the evening of August 3, 2002, appellant backed a truck and trailer out of an alleyway on to Exchange Street in Fort Worth, Texas, forcing him to stop his motorcycle in order to avoid a collision with appellant’s vehicle. According to Officer Sutherland, appellant backed into the opposite lane of traffic and started driving toward him, going the wrong direction, and forcing Officer Sutherland to move out of appellant’s way.  Officer Sutherland then made a U-turn and fell behind appellant’s vehicle.  Seeing that neither appellant nor his passenger were wearing seatbelts, Officer Sutherland initiated a traffic stop.

Upon approaching appellant, Officer Sutherland noticed the strong odor of an alcoholic beverage on appellant’s breath, appellant’s clothes were in disarray, his eyes were “kind of red,” and his speech was a “little slow and slurred.”  Believing appellant was intoxicated and because appellant had a passenger in the car,
 Officer Sutherland called for the assistance of another officer; Officer Scott arrived at the scene within seconds.  After explaining to Officer Scott that he believed appellant was intoxicated, Officer Sutherland asked Officer Scott to conduct a field sobriety evaluation on appellant.  Officer Scott approached appellant, who was still sitting in his vehicle, and noticed that appellant had a strong odor of an alcoholic beverage on his breath; glassy, bloodshot eyes; and slurred speech.  When Officer Scott asked appellant to step out of the vehicle, both officers noticed appellant swayed and was unsteady when he walked.

Scott administered three field sobriety tests: the horizontal gaze nystagmus (“HGN”), the walk-and-turn, and the one-leg stand.  When Officer Scott administered the HGN, he observed a lack of smooth pursuit in both of appellant’s eyes, distinct nystagmus at maximum deviation in both eyes, and the onset of nystagmus at forty-five degrees in both eyes.  Of a possible six clues on the HGN, appellant scored six.  When Officer Scott administered the walk-and-turn
 test, appellant was unable to keep his balance while listening to the instructions, started the test before Officer Scott finished giving him the instructions, did not walk heel-to-toe as instructed, and did not take the correct number of steps.  Of a possible eight clues, appellant demonstrated four.  During the one-leg stand, appellant swayed while balancing, put his foot down, used his arms, and put his foot down at the count of thirteen 
after being instructed to count to thirty, stating he could not do the test.  He exhibited three of four possible clues.

Based on his observations and appellant’s performance on the sobriety tests, Office Scott formed the opinion that appellant had lost the normal use of his physical and mental faculties due to the consumption of alcohol, and placed appellant under arrest for driving while intoxicated.  An inventory search of appellant’s vehicle revealed the presence of beer cans
. 
 
Officer Sutherland testified that “there were several beer cans.  Some of them had some liquid in them, and they were still cold to the touch.”  Officer Scott testified that “[he] located eighteen 16-ounce Busch cans, which some of them were three-quarters empty, and they were all cold to the touch.”  Appellant’s passenger was released.

Because both officers were on motorcycles, Officer Pierce was called to transport appellant to the intoxilyzer facility.  At the facility, appellant refused to provide a sample of breath and to perform additional sobriety tests.  
Officer Pierce described appellant as having red, bloodshot, and watery eyes; slurred speech; and a strong odor of alcohol on his breath.

After the State presented the officer’s testimony, Bailiff Singleton, the bailiff for the trial court in which appellant was being tried, also testified for the State.  He testified that in his experience with appellant, who had been incarcerated from August 3, 2002 until the date of trial, appellant had not slurred his speech or had any problems walking that he had noticed.  Bailiff Singleton also explained that while appellant was “slow” in his understanding at times and in response to orders, there was nothing unusual about the appellant as a prisoner.  After the videotape of the appellant in the intoxilyzer room was shown to the jury, the state rested.

Before appellant testified, his Mental Health and Mental Reatardation (“MHMR”) records were admitted into evidence by the defense, but not shown to the jury.
(footnote: 5)  Appellant then testified before the jury.  He explained that he had suffered a head injury when he had been hit in the head with a hammer in 1978, which caused him to have bad balance (a wobble); problems forming and retaining memories; and made him incapable of holding down regular work. Instead, he works picking up junk, mowing yards, and doing clean-up work.  Appellant testified that he had been receiving continuous treatment at Tarrant County’s MHMR facilities from psychiatrists and was taking medication that they prescribed at the time of the trial and his arrest.  Appellant admitted that alcohol affects him, but stated that he does not have a problem with alcohol.  Appellant further admitted that he did not tell the arresting officers about the injury to his head.

In regard to the night of his arrest, appellant explained that he had been out cleaning up northside bars, which included picking up empty beer cans and bottles, loading them up, and taking them away.  Appellant explained that on his way home, he purchased a six-pack of beer, stopped by a customer’s place of business to see about work for the following day, and drank half a beer in the customer’s driveway.  As he was leaving, he was stopped by a police officer.  Appellant denied that he backed out of the alleyway in an unsafe manner, that he ever came close to hitting Officer Sutherland, or that Officer Sutherland had to stop suddenly in order to avoid hitting appellant’s vehicle.  Appellant explained that he was not intoxicated on the night he was arrested, and the bottles he recovered and planned to sell for recycling caused his car to smell of alcohol.  On cross-examination, appellant denied that he ever possessed, sold, or used controlled substances, denied backing out of the alleyway in an unsafe manner or going the wrong way on a street, admitted that he had been convicted of burglary in 2000, and admitted that he had twice been convicted of theft of cigarettes in 1998.

C.  Application

In reviewing the sufficiency of the evidence, the reviewing court is not to encroach upon the fact finder’s role as the sole judge of the weight and credibility of witness testimony. 
 
Vasquez v. State
, 67 S.W.3d 229, 236 (Tex. Crim. App. 2002). The weight given to contradictory testimonial evidence is within the sole province of the jury, because it turns on an evaluation of credibility and demeanor.  
Dimas v. State
, 987 S.W.2d 152, 155 (Tex. App.—Fort Worth 1999, pet. ref’d).  
Here, appellant complains about “discrepancies” between Officer Sutherland’s and Officer Scott’s testimony regarding how many cans were cold to the touch
(footnote: 6) and the disagreement between appellant and the other officers regarding his driving and intoxication. Because it was within the jury’s province to reconcile the officers’ testimony and believe the testimony of the officers over the evidence presented by appellant, which included his testimony and his documentary evidence,
(footnote: 7) we hold that the evidence was factually sufficient to support the jury’s verdict.  We overrule appellant’s third point.

V.  C
ONCLUSION

Having overruled appellant’s points on appeal, we affirm the judgment of the trial court.

BOB MCCOY

JUSTICE

PANEL B: DAUPHINOT, WALKER, and MCCOY, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED: February 12, 2004

FOOTNOTES
1: In his statement of the facts and again in his rendition of the facts relevant to his first two issues, appellant points out that he filed a motion to recuse Judge Sharen Wilson, and maintains that all actions taken after that motion was filed, including any action which led to the appointment of Judge David Richards by the presiding judge of the administrative region, are void, and warrant the granting of a new trial.  However, appellant admits that the record does not show that the motion was ever ruled upon and appellant raises no such point on appeal, makes no argument in support of his contention, and fails to provide authority to show that the issue can be raised for the first time on appeal.  In the absence of such, the issue is inadequately briefed.  
Tex. R. App. P.
 33.1(a)(2), 38.1(h); 
McDuff v. State
, 939 S.W.2d 607, 621 (Tex. Crim. App. 1997).  

2:
Although no order appointing counsel appears in the clerk’s record, a document filed on October 17, 2002, bears the signature of Travis Young, acting as appellant’s attorney, and in his brief, appellant’s court-appointed counsel on appeal identifies Mr. Young as appellant’s court-appointed counsel at trial.

3: In addition to the pro se motions appellant filed regarding his attorney, he also filed more than twenty-five various pro se motions and requests.

4: Because appellant’s first two points are interrelated, we will address them together.

5: These records contain numerous psychiatric rating scales and health assessments, dating back to 1994.  These documents contain various ratings of appellant’s speech patterns, and the presence or absence of motor retardation.  In their closing arguments, both attorneys for the State and appellant’s attorney asked the jury to look at these records, but speak only in generalities as to what the records reveal.  In his complaint on appeal regarding factual sufficiency, appellant does not mention these records.

6: While appellant characterizes Officer Sutherland’s testimony as stating “some” of the beer cans were cold to the touch, while Officer Scott said they were all cold, Officer Sutherland actually testified, “there were several beer cans.  Some of them had some liquid in them, and they were still cold to the touch.”  This testimony is ambiguous.  The officer may have meant that only those cans containing liquid were cold, or he may have meant that all of the cans were cold.  

7: 
While the attorney for the appellant argued that appellant’s head injury and mental illness accounted for his poor balance and slurred speech at the time of his arrest, neither of these alleged conditions can account for the presence of nystagmus in both of appellant’s eyes during the administration of the field sobriety tests, appellant’s glassy, bloodshot eyes, or the strong smell of alcohol on his breath.