COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-240-CR
 
  
STEVE 
GEORGE TEPP                                                            APPELLANT
 
V.
 
THE 
STATE OF TEXAS                                                                  STATE
  
------------
 
FROM 
CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY
 
------------
 
OPINION
 
------------
I. INTRODUCTION
        In 
three points, appellant Steve George Tepp challenges his felony conviction of 
driving while intoxicated (“DWI”). In points one and two, appellant 
complains the trial court erred in denying his right to self-representation and 
in failing to adequately admonish, warn and inquire into appellant’s desire 
and suitability to represent himself. In his third point, he argues that the 
evidence is factually insufficient to support the verdict.[1]  
We affirm.
II. FACTUAL AND PROCEDURAL 
BACKGROUND
        Following 
his August 3, 2003 arrest, appellant was charged with felony DWI. On August 7 
and 8, 2002, appellant signed waivers of court-appointed counsel. On August 9, 
2002, however, appellant completed a financial statement and signed a request 
for appointed counsel.[2]  On January 27, 2003, 
and again on May 19, 2003, appellant filed pro se documents entitled “Motion 
For Self-Representation Along with Appointed Counsel” requesting, pursuant to 
article 1.05 of the Texas Code of Criminal Procedure, and article I, section 10 
of the Texas Constitution, that he be allowed to represent himself along with 
counsel. On January 27, 2003 and June 9, 2003, appellant also filed declaration 
of conflict motions in which he asked the court to remove his appointed counsel. 
On May 28, 2003, appellant filed pro se motions to substitute counsel asking 
that his appointed attorney be replaced by attorney Mimi Coffey, whom appellant 
considered a “DWI specialist.”
        On 
June 11, 2003, the trial court questioned appellant about his complaints 
concerning his court-appointed counsel. At that time, appellant informed the 
court that he had not had adequate discussions with the trial counsel regarding 
his pro se motions[3] and his trial strategy. After 
explaining that any delay in getting appellant’s case to trial was due to the 
crowded nature of the court’s docket, rather than his attorney’s lack of 
interest in the case, the trial court asked appellant if he still wanted to 
present the matter to the court. Appellant responded, “I don’t know. I 
guess, we could go ahead, Your Honor.” The court then asked appellant if it 
was his desire to withdraw his declaration of conflict, to which appellant 
responded, “Yes, Your Honor, and I’ll speak with him some more.”
        On 
the day of trial, prior to voir dire, the judge denied appellant’s motion 
requesting he be allowed to represent himself “along with” his appointed 
counsel stating, “I’ve noted there are a number of pro se motions in the 
file. I am not going to permit hybrid representation. I am not going to let you 
and your attorney act as lawyers. . . . So those motions will be overruled.” 
Appellant then asked the court for a continuance. The trial court denied his 
request stating, “[A]s I said before, when I say hybrid representation, that 
means I’m not going to have two lawyers representing the defense, you and Mr. 
Young. So I’ll entertain any motions that Mr. Young has, but I’m not going 
to allow you to make any pro se motions in court.” Appellant then asked to 
reassert his pro se motion to substitute counsel. The trial court denied 
appellant’s request. Appellant later pleaded not guilty and stipulated to two 
prior convictions of DWI.
        After 
hearing the evidence from both sides, the jury found appellant guilty of the 
felony offense of DWI. At the punishment phase of the trial, the State 
introduced evidence of appellant’s two prior convictions of misdemeanor theft, 
a conviction of misdemeanor assault with bodily injury, and felony convictions 
of delivery of a controlled substance, burglary of a building, and burglary of a 
motor vehicle. After finding both the felony enhancement allegations alleged in 
the indictment were “true,” the jury assessed punishment at twelve years’ 
confinement.
III. APPELLANT’S 
RIGHT OF 
SELF-REPRESENTATION
        In 
point one, appellant complains that the trial court erred in requiring that he 
proceed to trial with unwanted appointed counsel rather than permitting him to 
represent himself at trial. In point two, appellant argues the trial court 
failed to adequately admonish, warn, and inquire into the appellant’s desire 
and suitability to represent himself.[4]
        The 
United States and Texas Constitutions provide that in all criminal prosecutions, 
the accused has the right to assistance of counsel for his defense. Tex. Const. art. 1, § 10. Faretta v. 
California, 422 U.S. 806, 814 95 S. Ct. 2525, 2530 (1975). Along with the 
right to counsel is the right to waive counsel and to represent oneself. Faretta, 
422 U.S. at 807, 95 S. Ct. at 2525; Robles v. State, 577 S.W.2d 699, 703 
(Tex. Crim. App. 1979). However, a waiver of the right to counsel will not be 
lightly inferred, and the courts will indulge every reasonable presumption 
against the validity of such a waiver. Geeslin v. State, 600 S.W.2d 309, 
313 (Tex. Crim. App. [Panel Op.] 1980). When a criminal defendant chooses to 
assert the right of self-representation, he must make a clear and unequivocal 
assertion that he wants to represent himself and does not want counsel. Faretta, 
422 U.S. at 835-36, 95 S. Ct. at 2541. Only at this invocation must the trial 
court inform the accused of the dangers and disadvantages of self-representation 
under Faretta and Article 1.051(g) of the Texas Code of Criminal 
Procedure, which ensure that the accused knowingly and intelligently waived his 
right to counsel. Hawthorn v. State, 848 S.W.2d 101, 123 (Tex. Crim. App. 
1992), cert. denied, 509 U.S. 932 (1993).
        The 
first issue then is whether appellant clearly and unequivocally asserted that he 
wanted to represent himself and did not want counsel, so as to invoke the 
admonishment requirement. Here, appellant never made a clear and unequivocal 
assertion of his right of self-representation. He initially signed a waiver of 
court-appointed counsel. However, by subsequently signing a request for counsel, 
it cannot be said that appellant asserted his right to represent himself. See 
Funderburg v. State, 717 S.W.2d 637, 642 (Tex. Crim. App. 1986).
        Similarly, 
appellant’s pro se motions for self-representation along with appointed 
counsel, pursuant to Article 1.051 of the Texas Code of Criminal Procedure and 
Article I, section 10 of the Texas Constitution, was not an unequivocal demand 
for self-representation. See Hawkins v. State, 613 S.W.2d 720, 727 n.25 
(Tex. Crim. App. 1981) (holding that the language which states “the accused 
shall have the right of being heard by himself or by counsel, or both” is not 
to be taken literally); see also Scarbrough v. State, 777 S.W.2d 83, 92 
(Tex. Crim. App. 1989) (holding that there is no right to “hybrid” 
representations—i.e., partially pro se and partially by counsel — although 
it can be permitted). Therefore, appellant’s request to work “along with” 
his attorney was not an unconditional and unequivocal assertion of the right to 
self-representation. Scarborough, 777 S.W.2d at 93; see also United 
States v. Treff, 924 F.2d 975, 979 n.6 (10th Cir.), cert. 
denied, 500 U.S. 958 (1991) (holding that a defendant’s request to serve 
as co-counsel with his defense attorney is not an unequivocal demand for 
self-representation).
        Appellant’s 
pro se motions to substitute counsel filed after his motions for 
self-representation along with appointed counsel make clear his desire to be 
represented by counsel at trial. In his motion to substitute, appellant did not 
request the appointment of another attorney to work “along with” him, but 
asked that a specific attorney be substituted for his “attorney of record.” 
Moreover, when he attempted to reassert the motion the first day of trial, he 
did not invoke his right of self-representation. Finally, appellant’s 
complaints regarding his court-appointed counsel contained in his pro se 
declarations of conflict, which he later withdrew before the trial court, did 
not amount to a clear and unequivocal assertion of his right to 
self-representation. See Foster v. State, 817 S.W.2d 390, 392 (Tex. 
App.—Beaumont 1991, no pet.).
        In 
conclusion, appellant never clearly and unequivocally invoked his right to 
self-representation in the instant case. He asked only that he be allowed to 
work “along with” his court-appointed counsel, and complained that he did 
not want to be represented by the particular lawyer appointed to his case. 
Therefore, because appellant never invoked his right to self-representation, the 
trial court was not required to admonish appellant pursuant to Faretta. Hawthorn, 
848 S.W.2d at 123. We overrule appellant’s first and second points.
V. FACTUAL SUFFICIENCY OF THE EVIDENCE
        In 
his third point, appellant argues the evidence is insufficient to support the 
jury’s guilty verdict in that the greater weight and preponderance of the 
credible evidence demonstrates that the jury’s verdict is manifestly unjust, 
requiring a new trial. More specifically, appellant argues that the proof of his 
guilt is greatly outweighed by (1) a discrepancy between the officers’ 
testimony regarding how many of the empty beer cans found in appellant’s 
vehicle were cold to the touch and (2) appellant’s testimony contradicting the 
officers’ testimony regarding the movement of his vehicle and whether he was 
intoxicated.
A. Standard of Review
        In 
reviewing the factual sufficiency of the evidence to support a conviction, we 
are to view all the evidence in a neutral light, favoring neither party. Johnson 
v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); Clewis v. State, 922 
S.W.2d 126, 129, 134 (Tex. Crim. App. 1996). Evidence is factually insufficient 
if it is so weak as to be clearly wrong and manifestly unjust or the adverse 
finding is against the great weight and preponderance of the available evidence. 
Johnson, 23 S.W.3d at 11. Therefore, we must determine whether a neutral 
review of all the evidence, both for and against the finding, demonstrates that 
the proof of guilt is so obviously weak as to undermine confidence in the 
verdict, or if the proof of guilt, although adequate if taken alone, is greatly 
outweighed by contrary proof. Id. In performing this review, we are to 
give due deference to the fact finder’s determinations. Id. at 8-9; Clewis, 
922 S.W.2d at 136. We may not substitute our judgment for that of the fact 
finder’s. Johnson, 23 S.W.3d at 12. Consequently, we may find the 
evidence factually insufficient only where necessary to prevent manifest 
injustice. Johnson, 23 S.W.3d at 9, 12; Cain v. State, 958 S.W.2d 
404, 407 (Tex. Crim. App. 1997).
        To 
make a determination of factual insufficiency, a complete and detailed 
examination of all the relevant evidence is required. Johnson, 23 S.W.3d 
at 12. A proper factual sufficiency review must include a discussion of the most 
important and relevant evidence that supports the appellant’s complaint on 
appeal. Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).
B. Evidence Presented
        Appellant 
was found guilty of felony DWI. The elements of DWI are: (1) operating a motor 
vehicle, (2) in a public place, (3) while intoxicated (not having the normal use 
of one’s mental or physical faculties by reason of the introduction of alcohol 
into the body). Tex. Penal Code Ann. 
§§ 49.01(2)(A), 49.04(a) (Vernon 2004). Because appellant was charged with 
felony DWI, the State was also required to prove that appellant had twice 
previously been convicted of operating a motor vehicle while intoxicated. Id. 
§ 49.09(b)(2).
        At 
trial, appellant stipulated that he had twice been convicted of operating a 
motor vehicle while intoxicated, and this stipulation was admitted into evidence 
before the jury. Regarding the offenses for which appellant was on trial, the 
State called Fort Worth Police Officers R.C. Sutherland, D.J. Scott, and Ken 
Pierce, as well as Bailiff Don Singleton to testify. Officer Sutherland 
testified that on the evening of August 3, 2002, appellant backed a truck and 
trailer out of an alleyway on to Exchange Street in Fort Worth, Texas, forcing 
him to stop his motorcycle in order to avoid a collision with appellant’s 
vehicle. According to Officer Sutherland, appellant backed into the opposite 
lane of traffic and started driving toward him, going the wrong direction, and 
forcing Officer Sutherland to move out of appellant’s way. Officer Sutherland 
then made a U-turn and fell behind appellant’s vehicle. Seeing that neither 
appellant nor his passenger were wearing seatbelts, Officer Sutherland initiated 
a traffic stop.
        Upon 
approaching appellant, Officer Sutherland noticed the strong odor of an 
alcoholic beverage on appellant’s breath, appellant’s clothes were in 
disarray, his eyes were “kind of red,” and his speech was a “little slow 
and slurred.” Believing appellant was intoxicated and because appellant had a 
passenger in the car, Officer Sutherland called for the assistance of another 
officer; Officer Scott arrived at the scene within seconds. After explaining to 
Officer Scott that he believed appellant was intoxicated, Officer Sutherland 
asked Officer Scott to conduct a field sobriety evaluation on appellant. Officer 
Scott approached appellant, who was still sitting in his vehicle, and noticed 
that appellant had a strong odor of an alcoholic beverage on his breath; glassy, 
bloodshot eyes; and slurred speech. When Officer Scott asked appellant to step 
out of the vehicle, both officers noticed appellant swayed and was unsteady when 
he walked.
        Scott 
administered three field sobriety tests: the horizontal gaze nystagmus (“HGN”), 
the walk-and-turn, and the one-leg stand. When Officer Scott administered the 
HGN, he observed a lack of smooth pursuit in both of appellant’s eyes, 
distinct nystagmus at maximum deviation in both eyes, and the onset of nystagmus 
at forty-five degrees in both eyes. Of a possible six clues on the HGN, 
appellant scored six. When Officer Scott administered the walk-and-turn test, 
appellant was unable to keep his balance while listening to the instructions, 
started the test before Officer Scott finished giving him the instructions, did 
not walk heel-to-toe as instructed, and did not take the correct number of 
steps. Of a possible eight clues, appellant demonstrated four. During the 
one-leg stand, appellant swayed while balancing, put his foot down, used his 
arms, and put his foot down at the count of thirteen after being instructed to 
count to thirty, stating he could not do the test. He exhibited three of four 
possible clues.
        Based 
on his observations and appellant’s performance on the sobriety tests, Office 
Scott formed the opinion that appellant had lost the normal use of his physical 
and mental faculties due to the consumption of alcohol, and placed appellant 
under arrest for driving while intoxicated. An inventory search of appellant’s 
vehicle revealed the presence of beer cans. Officer Sutherland testified that 
“there were several beer cans. Some of them had some liquid in them, and they 
were still cold to the touch.” Officer Scott testified that “[he] located 
eighteen 16-ounce Busch cans, which some of them were three-quarters empty, and 
they were all cold to the touch.” Appellant’s passenger was released.
        Because 
both officers were on motorcycles, Officer Pierce was called to transport 
appellant to the intoxilyzer facility. At the facility, appellant refused to 
provide a sample of breath and to perform additional sobriety tests. Officer 
Pierce described appellant as having red, bloodshot, and watery eyes; slurred 
speech; and a strong odor of alcohol on his breath.
        After 
the State presented the officer’s testimony, Bailiff Singleton, the bailiff 
for the trial court in which appellant was being tried, also testified for the 
State. He testified that in his experience with appellant, who had been 
incarcerated from August 3, 2002 until the date of trial, appellant had not 
slurred his speech or had any problems walking that he had noticed. Bailiff 
Singleton also explained that while appellant was “slow” in his 
understanding at times and in response to orders, there was nothing unusual 
about the appellant as a prisoner. After the videotape of the appellant in the 
intoxilyzer room was shown to the jury, the state rested.
        Before 
appellant testified, his Mental Health and Mental Retardation  (“MHMR”) 
records were admitted into evidence by the defense, but not shown to the jury.[5] Appellant then testified before the jury. He 
explained that he had suffered a head injury when he had been hit in the head 
with a hammer in 1978, which caused him to have bad balance (a wobble); problems 
forming and retaining memories; and made him incapable of holding down regular 
work. Instead, he works picking up junk, mowing yards, and doing clean-up work. 
Appellant testified that he had been receiving continuous treatment at Tarrant 
County’s MHMR facilities from psychiatrists and was taking medication that 
they prescribed at the time of the trial and his arrest. Appellant admitted that 
alcohol affects him, but stated that he does not have a problem with alcohol. 
Appellant further admitted that he did not tell the arresting officers about the 
injury to his head.
        In 
regard to the night of his arrest, appellant explained that he had been out 
cleaning up northside bars, which included picking up empty beer cans and 
bottles, loading them up, and taking them away. Appellant explained that on his 
way home, he purchased a six-pack of beer, stopped by a customer’s place of 
business to see about work for the following day, and drank half a beer in the 
customer’s driveway. As he was leaving, he was stopped by a police officer. 
Appellant denied that he backed out of the alleyway in an unsafe manner, that he 
ever came close to hitting Officer Sutherland, or that Officer Sutherland had to 
stop suddenly in order to avoid hitting appellant’s vehicle. Appellant 
explained that he was not intoxicated on the night he was arrested, and the 
bottles he recovered and planned to sell for recycling caused his car to smell 
of alcohol. On cross-examination, appellant denied that he ever possessed, sold, 
or used controlled substances, denied backing out of the alleyway in an unsafe 
manner or going the wrong way on a street, admitted that he had been convicted 
of burglary in 2000, and admitted that he had twice been convicted of theft of 
cigarettes in 1998.
C. Application
        In 
reviewing the sufficiency of the evidence, the reviewing court is not to 
encroach upon the fact finder’s role as the sole judge of the weight and 
credibility of witness testimony. Vasquez v. State, 67 S.W.3d 229, 236 
(Tex. Crim. App. 2002). The weight given to contradictory testimonial evidence 
is within the sole province of the jury, because it turns on an evaluation of 
credibility and demeanor. Dimas v. State, 987 S.W.2d 152, 155 (Tex. 
App.—Fort Worth 1999, pet. ref’d). Here, appellant complains about 
“discrepancies” between Officer Sutherland’s and Officer Scott’s 
testimony regarding how many cans were cold to the touch[6] 
and the disagreement between appellant and the other officers regarding his 
driving and intoxication. Because it was within the jury’s province to 
reconcile the officers’ testimony and believe the testimony of the officers 
over the evidence presented by appellant, which included his testimony and his 
documentary evidence,[7] we hold that the evidence 
was factually sufficient to support the jury’s verdict. We overrule 
appellant’s third point.
V. CONCLUSION
        Having 
overruled appellant’s points on appeal, we affirm the judgment of the trial 
court.


   
                                                                  BOB 
MCCOY
                                                                  JUSTICE

 
PANEL 
B:   DAUPHINOT, WALKER, and MCCOY, JJ.
 
DO 
NOT PUBLISH
Tex. R. App. P. 47.2(b)
 
DELIVERED: 
February 12, 2004


NOTES
1. 
In his statement of the facts and again in his rendition of the facts relevant 
to his first two issues, appellant points out that he filed a motion to recuse 
Judge Sharen Wilson, and maintains that all actions taken after that motion was 
filed, including any action which led to the appointment of Judge David Richards 
by the presiding judge of the administrative region, are void, and warrant the 
granting of a new trial. However, appellant admits that the record does not show 
that the motion was ever ruled upon and appellant raises no such point on 
appeal, makes no argument in support of his contention, and fails to provide 
authority to show that the issue can be raised for the first time on appeal. In 
the absence of such, the issue is inadequately briefed. Tex. R. App. P. 33.1(a)(2), 38.1(h); McDuff v. 
State, 939 S.W.2d 607, 621 (Tex. Crim. App. 1997).
2. 
Although no order appointing counsel appears in the clerk’s record, a document 
filed on October 17, 2002, bears the signature of Travis Young, acting as 
appellant’s attorney, and in his brief, appellant’s court-appointed counsel 
on appeal identifies Mr. Young as appellant’s court-appointed counsel at 
trial.
3. 
In addition to the pro se motions appellant filed regarding his attorney, he 
also filed more than twenty-five various pro se motions and requests.
4. 
Because appellant’s first two points are interrelated, we will address them 
together.
5. 
These records contain numerous psychiatric rating scales and health assessments, 
dating back to 1994. These documents contain various ratings of appellant’s 
speech patterns, and the presence or absence of motor retardation. In their 
closing arguments, both attorneys for the State and appellant’s attorney asked 
the jury to look at these records, but speak only in generalities as to what the 
records reveal. In his complaint on appeal regarding factual sufficiency, 
appellant does not mention these records.
6. 
While appellant characterizes Officer Sutherland’s testimony as stating 
“some” of the beer cans were cold to the touch, while Officer Scott said 
they were all cold, Officer Sutherland actually testified, “there were several 
beer cans. Some of them had some liquid in them, and they were still cold to the 
touch.” This testimony is ambiguous. The officer may have meant that only 
those cans containing liquid were cold, or he may have meant that all of the 
cans were cold.
7. 
While the attorney for the appellant argued that appellant’s head injury and 
mental illness accounted for his poor balance and slurred speech at the time of 
his arrest, neither of these alleged conditions can account for the presence of 
nystagmus in both of appellant’s eyes during the administration of the field 
sobriety tests, appellant’s glassy, bloodshot eyes, or the strong smell of 
alcohol on his breath.