COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-04-344-CR

 

 

EDDIE WAGNER MARTIN, JR.                                                APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

             FROM
THE 89TH DISTRICT COURT OF WICHITA COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

                                         Introduction

Appellant Eddie Wagner
Martin, Jr. appeals from his conviction for murder.  In two points, he complains that the trial
court erred when it denied his request to represent himself at trial.  We affirm.

 








                                Procedural
Background

Because Appellant does not
challenge the sufficiency of the evidence, we need not recite the facts of the
underlying guilty verdict.  Appellant was
charged by indictment with murder; the indictment contained one enhancement
allegation.  The jury determined
Appellant was guilty and the enhancement allegation was true.  The jury assessed Appellant=s punishment at sixty years= confinement and a $5,000 fine.

                             Right
To Self-Representation








In two points, Appellant
contends the trial court erred by denying him his  constitutional right of
self-representation.  Under the Sixth
Amendment to the United States Constitution, an individual may choose to
represent himself so long as he makes the decision to do so intelligently,
knowingly, and voluntarily.  U.S. Const. amend. VI; Godinez v.
Moran, 509 U.S. 389, 399-402, 113 S. Ct. 2680, 2686-88 (1993); Faretta
v. California, 422 U.S. 806, 835, 95 S. Ct. 2525, 2541 (1975);[2]
Oliver v. State, 872 S.W.2d 713, 715 (Tex. Crim. App. 1994).  In Texas, this right is also protected by the
Texas Constitution.  Tex. Const. art. 1, ' 10; see Tex. Code Crim.
Proc. Ann. art. 1.051(f) (Vernon 2005). 

In the seminal case of Faretta
v. California, the Court determined that weeks before trial the defendant
had clearly and unequivocally declared to the trial judge that he wanted to
represent himself and did not want counsel. 
422 U.S. at 835, 95 S. Ct. at 2541. 
The Court held that the record affirmatively showed that Faretta was
literate, competent, and understanding, and that he was voluntarily exercising
his informed free will.  Id.  The Court further stated,

The
trial judge had warned Faretta that he thought it was a mistake not to accept
the assistance of counsel, and that Faretta would be required to follow all the
Aground
rules@ of
trial procedure.  We need make no
assessment of how well or poorly Faretta had mastered the intricacies of the
hearsay rule and the California code provisions that govern challenges of
potential jurors on voir dire. For his technical legal knowledge, as such, was
not relevant to an assessment of his knowing exercise of the right to defend
himself.

 

Id.
(internal citations omitted).  Applying
the holding of Faretta, the Texas Court of Criminal Appeals has
similarly opined,








A[A]
defendant need not himself have the skill and experience of a lawyer in order
competently and intelligently to choose self‑representation[.]"  [N]either the defendant's technical legal
training nor his ability to conduct an adequate defense are requisites for self‑representation.  While the choice must be knowingly and
intelligently made, it need not be wise. 
Indeed, the accused must be permitted to "conduct his own defense
ultimately to his own detriment," if that is his informed decision.  Whether he is competent to represent himself
is immaterial; the appropriate question is whether he is competent to choose
the endeavor.  Moreover, that its
exercise may cause some inconvenience or even disruption in the trial
proceedings, so long as it is not a calculated obstruction, cannot deprive the
accused of the right, once asserted.  

Scarbrough v. State, 777 S.W.2d 83, 92 (Tex. Crim. App. 1989) (internal citations
omitted).

There are two prerequisites
that need to be addressed in order to determine whether this right has
attached.  First, this right does not
attach until a defendant clearly and unequivocally asserts it.  Faretta, 422 U.S. at 835-36, 95 S. Ct. at
2541; Scarbrough, 777 S.W.2d at 92; Funderburg v. State, 717
S.W.2d 637, 642 (Tex. Crim. App. 1986). 
Second, the right to self-representation may not be exercised simply to
delay the orderly procedure of the courts or to interfere with the fair
administration of justice.  Thomas v.
State, 550 S.W.2d 64, 68 (Tex. Crim. App. 1977); Parker v. State,
545 S.W.2d 151, 156 (Tex. Crim. App. 1977). 









Whether a defendant has
invoked his right to self-representation is a threshold factual issue that we
review under the abuse of discretion standard. 
DeGroot v. State, 24 S.W.3d 456, 457 (Tex. App.CCorpus Christi 2000, no pet.). 
A trial court abuses its discretion when its decision is so clearly
wrong as to lie outside the zone within which reasonable persons might
disagree.  Howell v. State, 175
S.W.3d 786, 790 (Tex. Crim. App. 2005); Cantu v. State, 842 S.W.2d 667,
682 (Tex. Crim. App. 1992), cert denied, 509 U.S. 926 (1993).

    Appellant=s Assertion Of The Right To Self-Representation

On February 17, 2003,
Appellant filed a pro se motion requesting substitute appointed counsel.  The motion specifically states that Appellant
has reviewed Faretta v. California, and he is Anot capable of representing himself; and will not waive his Sixth
Amendment right to counsel.@  The motion further states that
Appellant informed his appointed counsel that he Ais not seeking to request self representation.@








On March 20, 2003, the trial
court held a hearing on Appellant=s motion. Appellant acknowledged that the court had previously
appointed three different attorneys to represent him, in addition to his
present attorney.  Appellant informed the
court that he Awould like
to insist upon my right to counsel@ and that he simply wanted a new attorney.  The court said a new attorney would be
appointed.  At the hearing, Appellant
insisted upon new counsel and did not assert any desire to represent himself;
therefore, the court did not admonish Appellant of the dangers of
self-representation.  On April 1, 2003,
the trial court appointed substitute counsel, Tom Allensworth, to represent
Appellant.         On August 7, 2003 and
November 18, 2003, Appellant pro se filed 
motions requesting substitute counsel. 
The record does not reflect that the trial court acted upon the
motions.  On February 11, 2004, Appellant
pro se filed ADefendant=s Waiver Of Right To Counsel, And Motions To Proceed Pro Se.@ In this motion, Appellant stated he waived his Sixth Amendment right
to counsel, and he requested the court hold a Faretta hearing and grant
his request to proceed pro se.  On March
10, 2004, Appellant pro se filed a AMotion For Faretta Hearing@ in which he waived his Sixth Amendment right to counsel, requested he
be permitted to proceed pro se, or alternatively, that he be permitted hybrid
representation.

On May 13, 2004, the trial
court held a Faretta hearing.  The
court properly admonished Appellant about the seriousness of the charges
against him and the dangers and disadvantages of self-representation.  After each of the eleven admonitions, the
judge inquired if Appellant understood and he answered affirmatively.  The court then inquired if Appellant still
wished to Apersist in
representing [himself] in this matter@ and Appellant responded AYes.@  Mr. Allensworth proceeded to question
Appellant about his knowledge of the law. 
The court then asked Appellant,








THE
COURT:  Okay.  Mr. Martin you heard Mr. Allensworth ask you
some really fairly basic simple legal type of questions and obviously you do
not know the answers.  Doesn=t that make you uncomfortable about going to trial and representing
yourself?

THE WITNESS: 
Well, I was uncomfortable even about filing a motion to ask to represent
myself, because I=ve
read case law pertaining to it about inmates representing themselves before and
I understand that it=s,
you know, it=s not
too wise to do, but I think I have -- I mean Mr. Allensworth, he is basically
-- tries to play on my intelligence, he don=t try to help me any.  It wouldn=t do no good whether he
represents me in this case or if I represent myself, the outcome will probably
be the same.

 

After the State briefly questioned Appellant, the
court stated,[3]

THE COURT: . . .I don=t
want to ram something down your throat. 
You have a lawyer and you think the results is worse, I can=t
help thinking you=re
making a terrible mistake to represent yourself. Do you really want to do that?

 

THE WITNESS:  No, not really,
not really, only -- no.

 

THE COURT: 
I know you=re
not completely satisfied with everything Mr. Allensworth=s
done, but like I say, at the minimum he can preserve appellant [sic] review for
you.  Can=t you
try to work with him?  And you=ve
already gotten down a plea offer that=s come down ten years, that=s a
pretty good deal there.  But I don=t
want to ram it down your throat, you=re the one that is paying the
price.   We=re
not going to the penitentiary, we=re going to be staying
here.  But I want you to feel okay
with this.  Wouldn=t you
rather have a lawyer so you can preserve appellate review?

 

THE WITNESS:  I had really
rather have a lawyer.

 

The
court then ruled, 








THE COURT: 
Based on what I=ve
heard today, based on my understanding of the law, that Mr. Martin has shown to
me his educational level, I do find that he is not sufficiently able to
represent himself in this matter, and I continue Mr. Allensworth as his
attorney in this case.  And I hope that
despite the fact that we have had the hearing, that counsel and defendant will
be able to work together to get ready for trial which is important to Mr.
Martin.

 

MR. ALLENSWORTH: 
I have every confidence we will, Judge.

 

THE COURT: 
Are you objecting to the decision I made on the Ferretta hearing?

 

THE WITNESS: 
Yes.

 

THE COURT: 
I will note your exception to that ruling.  But you did tell me you didn=t
want to go without a lawyer, so I think you have some input that you realize it
to be a mistake to go without an attorney.  Mr. Allensworth will continue.

 

MR. ALLENSWORTH: 
Since we=re
going to be seeing each other at least on the 8th of July, we can go into this
- - this will give Mr. Martin an opportunity to brush up on the law and he can
reurge the Ferretta Hearing the Friday before we pick a jury if he=s
proven to the court he=s
more competent about the law at that point in time perhaps I can bid this case
a fond farewell.  In the meantime I=m
going to prepare for trial.  Is that the
instruction from the bench?

 

THE COURT: 
That=s
correct.  He can continue and reurge
the motion if he can display a further knowledge of the law at that time.  Thank you. 

 








On July 8, 2004, the trial
court and the parties dealt with numerous motions filed by Appellant=s counsel, after which they discussed Appellant=s request that the court reconsider his Faretta motion. 

MR. ALLENSWORTH: . . . My client just informs me
that he wants to ask you if you would reconsider his Ferretta Motion.  We left that possibility available to him
some time in the past.  Is that right,
Eddie?

 

MR. MARTIN: Yes, sir.

 

MR. ALLENSWORTH: And you want to serve as your
own lawyer in this case?

 

MR. MARTIN: Yes, sir.

 

MR. ALLENSWORTH: Now you=ve
had a certain amount of time to hone up on the law since the last time - -

 

MR. MARTIN: We do - -

 

COURT REPORTER: You=re
going to have to talk louder, please.

 

MR. MARTIN: We do not have access to a law
library for legal terms.

 

MR. ALLENSWORTH: So if I were to ask you the same
question like I asked you last time about three exceptions to the hearsay rule,
just as you said last time, you=d say this time, I don=t
know them; is that correct?

 

MR. MARTIN: I have not had access.

 

MR. ALLENSWORTH: Okay.  I don=t see any reason to disturb
your previous ruling, Judge.

 








THE COURT: I think nothing has changed since then
and it appears that Mr. Allensworth is zealously pursuing the case.  He=s covered all the relevant
motions you would expect defense counsel to do in the case and nothing has
changed as far as the amount of information or legal training or expertise.

 

When the court questioned
Appellant further, he indicated that he was unhappy with Mr. Allensworth
because he had not contacted some witnesses. Mr. Allensworth responded, AHe thinks getting rid of me is going to buy him another lawyer.  That=s not the case.  Instead, all it=s going to buy him is a ticket into the penitentiary for the next 99
years.@  The court then denied
Appellant=s motion.

The case was set for trial
for July 12, 2004.  During the pretrial
hearing on that date, the parties and the court again discussed Appellant=s request to proceed pro se, as follows:

[BY MR. ALLENSWORTH:]

 

Q      I
spoke to you this morning concerning your previous filings on your Ferretta
Motion; is that correct?

 

A      Yes,
sir.

 

Q      And
as a result of those discussions with me, you=ve
decided that you want to say something to the Judge; is that correct?

 

A      Well,
I understood that the Court was going to reconsider my Ferretta Motion, but I
wanted to say that I don=t have enough time to try to
prepare for trial and it wouldn=t do much good for me to try
to go ahead and go by myself right now today.








THE COURT: 
Well, I think the last time you brought up the Ferretta Motion was just
late last week and you wouldn=t have had much time then
either and that was one of the things that we were discussing that you didn=t
have a lot of time to prepare by yourself. 
I mean, do you think that would have been enough time if you=d had
from Thursday til today to be prepared for the trial?

 

MR. MARTIN: 
Not necessarily.

 

THE COURT: 
I don=t
think so either.

 

Q      (By
Mr. Allensworth) I guess the essential thing is that you had at one time
expressed a desire to represent yourself; is that correct?

 

A      Yes,
that was about two months ago.

 

Q      And
at that time the Judge rejected your motion; is that correct?

 

A      Yes,
sir.

 

Q      And
because she rejected that motion, then you haven=t had
time to acquaint yourself with the law and the facts in the case to the degree
that you feel comfortable with; is that correct?

 

A      Yes,
sir.

 

Q      Had
the Judge made a different decision, say, two months ago, you may have had the
time to acquaint yourself with the law and the facts; is that correct? 

 

A      Yes,
sir.

 

Q      And
it=s
your decision today to hire me as predicated upon the Judge=s
decision two months ago; is that correct?

 

A      Yes,
sir.








MR. ALLENSWORTH: 
Pass the witness.

 

During
cross-examination, the prosecutor asked Appellant,

 

Q      As
we stand here today, you do not want to represent yourself? 

 

A      I
don=t
have enough time to try to represent myself - - to try to prepare to represent
myself.

 

Appellant=s
counsel then asked Appellant, 

 

Q      In
direct response to Ms. Jones= question, for today, right
now, this moment, it=s your desire for me to
represent you; is that correct?

 

A      Yes,
I need an attorney.

 

Q      But
the reason that you had to reach that decision today is because of the Judge=s
decision two months ago; isn=t that also correct?

 

A      Yes,
sir.

 

The
court then questioned Appellant,

 

THE COURT: 
Mr. Martin, what is it - - I take it that what you=re
telling the Court is that you want to represent yourself, you=re
insisting upon your right to represent yourself, but you would need a
continuance in order to do that?

 

THE WITNESS: 
Yes.

 

. . .

 








THE COURT: 
Let=s go
back on the record in Cause Number 39690-C, State versus Eddie Wagner Martin,
Jr.  To update what has happened during
the recess since last on the record, John Brasher from the district attorney=s
office has done some legal research, in addition the court reporter went back
and checked on the proceedings at the May 13th hearing.  And at the conclusion of that hearing, as Ms.
Jones had recalled, the defendant did tell us at that time - - told the Court
that he would at least like to have counsel to represent him to be able to
preserve appellate review.  That was like
the last statement he made to the court. 
He did want counsel, at least, for that purpose, for being able to
preserve appellate review.  So that was
why at that time the court continued Mr. Allensworth to represent the defendant.


 

Appellant=s
counsel then questioned Appellant as follows:

 

BY MR. ALLENSWORTH: 

 

Q      Eddie,
I guess - - and we had extensive discussion on that same matter in that
room.  Do you have a preference as to
whether you go to trial today with me, today without me today, or in January by
yourself?

 

A      I
still would like to assert my right to represent myself.

 

Q      Good
enough.  When you say you would like to
assert you right to represent yourself, since there are two different
possibilities for when you would represent yourself, sit [sic] your desire to
represent yourself in January rather than today?

 

A      Is it
my desire?

 

Q      Let
me spell that out for you.  When you
say you want to represent yourself, do you want to represent yourself starting
after lunch when she calls in a jury?

 

A      I=m not
prepared to represent myself now.

 

Q      So
when you say you want to represent yourself, you want to represent yourself in
January; is that correct?  Or sometime
other than today?

 

A      Yes,
that=s
correct.








Q      We=ll
leave it as that.  The Judge may have a
another follow-up question or two.

 

MR. ALLENSWORTH:  Pass the
witness.

 

THE COURT: 
I don=t
have more questions.  Ms. Jones, do you
have any questions?

 

MS. JONES:  No.

 

THE COURT: 
Well, now that we=re
clear about what had happened procedurally in this matter since the last
expressed decision of the defendant at the May 13th hearing was that he did
wish to have counsel, and he stated his reasons for that.  This case 
has been, you know, pending since that time and I do find that it would
be - - we=ve
got a jury waiting to go, I know the State=s witnesses have been
subpoenaed, possibly defense witnesses, as well - - I=m not
sure about that - - so I=m
going to go ahead and proceed with the trial today.  We=ll resume Court at 2:00 o=clock
with the venire panel.  And I note the
Defendant=s
exception to the ruling.

 

MR. ALLENSWORTH: 
Do you continue on my appointment, Judge?

 

THE COURT: 
No, I will allow the defendant to represent himself as he has
expressed himself to do that.

 

MR. ALLENSWORTH: 
I=m not
so sure that=s a
correct expression of his desires at this point in time.

 

Edward, do you want me sitting next to you at 2 o=clock
today?

 

THE WITNESS: 
I=m not
prepared to represent myself today.

 








MR. ALLENSWORTH: 
Excuse me.  You need to answer
this question yes or not.  Do you want me
sitting next to you as your lawyer at 2:00 o=clock
in the afternoon; yes or no?

 

THE WITNESS:  Yes.

 

THE COURT: 
If that=s the
desire of the defendant, certainly, Mr. Allensworth you will continue in your
appointment then.

 

                                           Discussion

Alleged Constitutional Violation

In his first point, Appellant
contends the trial court denied him his right to represent himself as permitted
by the Sixth and Fourteenth Amendments to the United States Constitution.  








Although Appellant on several
occasions purported to waive his right to an attorney and assert his right to
represent himself, the record in this case indicates that at every hearing held
in the trial court Appellant continued to vacillate regarding whether he
desired to exercise his right to self‑representation or accept
representation by appointed counsel.  At
the March 20, 2003 hearing, Appellant stated he did not want to represent
himself, he simply wanted substitute appointed counsel.  At the May 13, 2004 hearing, Appellant
initially stated he wanted to represent himself, but then told the court that
he would Areally
rather have a lawyer.@  At the July 8, 2004 hearing, Appellant
indicated he was unhappy with his current counsel because he had not contacted
some witnesses.  The court then discussed
this complaint with Appellant and Mr. Allensworth and asked Appellant if he
wanted to make any comments on the issue. 
Appellant responded that he did not; after his conversation with the
court, Appellant did not re-assert his right to self-representation.  At the pretrial hearing on July 12, 2004,
Appellant expressly told the court that he wanted Mr. Allensworth to represent
him. 

Having reviewed all the
pretrial hearings, we conclude that Appellant=s assertion of his right to self-representation was never clear and
unequivocal.  Even at the final hearing
before trial, Appellant continued to vacillate in his desire to represent
himself; the apparent purpose of Appellant=s statements that he wished to represent himself seems to be that
Appellant wanted substitute counsel, notwithstanding the fact that his current
counsel was at least the fourth counsel appointed by the trial court in this
case.  Further, even when the trial court
agreed to permit Appellant to represent himself, he declined to do so.  In light of the context in which Appellant
expressed his desire to represent himself, we cannot say that the trial court
abused its discretion in initially denying his request, or in permitting
counsel to represent Appellant at trial after Appellant declined to represent
himself.  We overrule Appellant=s first point.

 

 








Alleged Violation of Article 1.051

In his second point,
Appellant contends the trial court denied him his right to waive counsel and
proceed pro se as permitted by article 1.051 of the Texas Code of Criminal
Procedure.  See Tex. Code Crim. Proc. Ann. art.
1.051(f)-(g).  This section provides
that:  a defendant, in writing, may
voluntarily and intelligently waive the right to counsel; if the defendant
chooses to waive counsel, the trial court shall advise him of the dangers and
disadvantages of self-representation; and if the court determines the waiver is
voluntarily and intelligently made the court shall provide the defendant with a
statement, which the defendant signs, stating that the defendant has been
properly advised and waives his right to counsel.  Id.

In the instant case, the
trial court advised Appellant, on the record, of the dangers and disadvantages
of self-representation.  Because we have
held that Appellant=s attempted
waiver of his right to counsel was not clear and unequivocal and that the trial
court did not abuse its discretion by not permitting Appellant to represent
himself, we further hold that the trial court did not err by not providing
Appellant with the written statement specified in article 1.051(g).  We overrule Appellant=s second point. 

 

 








                                           Conclusion

Having overruled both of
Appellant=s points, we
affirm the judgment of the trial court.

PER CURIAM

PANEL A: 
HOLMAN, J.; CAYCE, C.J.; and McCOY, J.

DO
NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  January 5, 2006











[1]See Tex. R. App. P. 47.4.





[2]AWhen
an accused manages his own defense, he relinquishes, as a purely factual
matter, many of the traditional benefits associated with the right to
counsel.  For this reason, in order to
represent himself, the accused must 'knowingly and intelligently' forgo those
relinquished benefits.  Although a
defendant need not himself have the skill and experience of a lawyer in order
competently and intelligently to choose self‑representation, he should be
made aware of the dangers and disadvantages of self‑representation, so
that the record will establish that 'he knows what he is doing and his choice
is made with eyes open.'@  Faretta, 422 U.S. at 835, 95 S. Ct. at
2541 (internal citations omitted).





[3]All
emphasis in quotations from the reporter=s record is supplied, unless
otherwise noted.